FREDERICK R. SEARS & others, executors, *vs.* ASSESSORS OF
THE TOWN OF NAHANT.

Essex.    March 1, 2, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Tax,* Abatement.    *Superior Court.*

History of legislation as to the requirement that a taxpayer shall furnish to the
    assessors a list of his taxable property before the day specified in the notice from
    the assessors, as a condition precedent to a complaint appealing from a refusal of
    the assessors to abate a tax on such property, recounted by HAMMOND, J.
Remark of METCALF, J., in *Winnisimmet Co.* v. *Assessors of Chelsea,* 6 Cush. 477, 481,
    that "by the provincial statutes . . . a party, aggrieved at the sum apportioned
    on him by assessors, and being refused an abatement by them, might appeal to
    the sessions for an abatement, in all cases, as a matter of right," declared to be
    erroneous so far at least as respects the law after 1735.  Per HAMMOND, J.
Under R. L. c. 12, §§ 77, 78, on an appeal from the refusal of the assessors of a
    town or city to abate a tax, the Superior Court has no power to abate the tax
    where the required list of taxable property was not brought in within the
    time specified in the notice given by the assessors, unless the assessors have
    found or the Superior Court finds that there was good cause for the delay.

PETITION, filed in the Superior Court on March 1, 1909,
under R. L. c. 12, § 78, appealing from the refusal of the assess-
ors of the town of Nahant · to abate a tax assessed to the peti-
tioners as the executors of the will of Frederick R. Sears.

In the Superior Court the case was heard by *Crosby,* J.,
without a jury.  Frederick R. Sears died on June 27, 1907.
His will was allowed on July 22, 1907.  The executors there-
under were the petitioners, the four sons of the testator, Fred-
erick R. Sears, Richard D. Sears, Philip S. Sears and Herbert
M. Sears.  On December 31, 1908, the petitioners filed a peti-
tion to the assessors of the town of Nahant, requesting an
abatement of taxes assessed on May 1, 1908, amounting to
$1,116.50, and also an abatement of taxes amounting to $44,000.
On January 13, 1909, the assessors gave a hearing to the peti-
tioners upon their petition, and on January 26, 1909, refused
to abate the tax of $44,000, (as well as the tax for $1,116.50,)
and notified the petitioners of their decision by a letter.

On March 1, 1909, the petitioners paid under protest in writ-
ing to the collector of the town of Nahant the tax so assessed
for $44,000 with interest on that amount in addition, amounting

to $1,320.   The assessors of the town of Nahant before making the assessments for 1908 gave the notice required by the statutes to the inhabitants and other persons liable to pay taxes therein, to bring in true lists of their personal estates before June 1, 1908.   Excepting a certain sworn statement and notice dated December 31, 1908, the form of which is not now material, the petitioners did not file with the assessors any list of personal property for the year 1908, or give them notice of the distribution of the estate of Frederick R. Sears.   The petitioners did not file any lists of their taxable property for the year 1908 either in Nahant or elsewhere, either as executors, trustees or in their individual capacities, except the instrument filed with the assessors of Nahant on December 31, 1908.

The judge found that the petitioners had not shown a reasonable excuse for their delay in not filing a list of personal property within the time specified in the notice given by the assessors for the bringing in of lists, and that there was no good cause for their delay in not doing so.   He further found that although the assessors on October 15, 1908, sent to Herbert M. Sears a letter and on October 24, 1908, sent to Philip S. Sears a letter, requesting them to make a sworn return of personal property belonging to the estate of Frederick R. Sears, and although these letters were received, no reply was made to either of them, and no information was furnished by the petitioners to the assessors concerning the estate except that contained in the affidavit dated and delivered to the chairman of the board of assessors on December 31, 1908, contemporaneously with the petition for an abatement of taxes, which already has been referred to.   The assessors acted in good faith, and made the assessment on their best information and belief.

The judge found that the assessors never had waived their right to have the petitioners furnish them with a list of personal estate in accordance with law, and never accepted the affidavit dated December 31, 1908, as a legal and sufficient list of the personal estate.   He found further, upon all the evidence in the case, that the petitioners undertook to distribute the personal estate left by Frederick R. Sears before May 1, 1908, for the purpose of avoiding the payment of a tax thereon for the year 1908, and did actually distribute all of the personal estate before

May 1, 1908, except the one hundred shares of stock of the North American Insurance Company and forty $1,000 five per cent bonds of the Chicago Junction Railway and Union Stockyards Company. As to this stock and these bonds, the judge found and ruled that they had not been legally distributed before May 1, 1908, but that on that date the legal title to the stock and bonds remained in the petitioners.

The judge refused to make certain rulings requested by the petitioners, and made the following decision: ·

" While the petitioners pray for an abatement of the tax assessed to estate of Frederick R. Sears in July, 1908, on a valuation of $101,500 and amounting to $1,116.50, I do not understand that the petitioners claim they are entitled to an abatement of this tax, as it was not assessed to the executors; it was therefore an illegal assessment, and the only remedy which the petitioners have, if any, to recover it back, is by an action of contract, and I so rule.

" I find that the petitioners are not entitled to an abatement of any portion of the tax of $44,000 levied upon the executors, and that the petition should be dismissed, and judgment rendered for the town of Nahant for its costs, to be taxed as in an action at law, and I report the case upon the facts found for the determination of the Supreme Judicial Court."

In accordance with this decision the judge reported the case for determination by this court. If upon any view of the law, arising upon the facts found, the petitioners were entitled to an abatement, judgment was to be entered for the petitioners in such sum as law and justice might require, or the cause might be remanded to the Superior Court to determine the amount of abatement to which the petitioners were entitled, with such costs, if any, in either event, as they might be entitled to. Otherwise judgment was to be entered upon the finding in favor of the respondent, with such costs and expenses as it might be entitled to, to be taxed by the Superior Court.

*H. E. Bolles,* (*W. C. Rice* with him,) for the petitioners.

*S. H. Hudson & P. Nichols,* for the respondents.

HAMMOND, J. This petition for the abatement of a tax upon personal property is filed under R. L. c. 12, § 78. Section 77 of the same chapter, after providing that a person aggrieved by the

refusal of the assessors to abate a tax may appeal therefrom by filing a complaint with the county commissioners, or any board exercising the power of such commissioners for the county in which the property is situated, and that if on a hearing the board finds that the property has been overrated it shall make a reasonable abatement and an order as to costs, further proceeds as follows: " If the list required to be brought in to the assessors was not brought in within the time specified in the notice required by section forty-one, the tax shall not be abated unless the appellate board finds that there was good cause for the delay or unless the assessors have so found as provided in section seventy-four. No costs shall be allowed to a complainant who has failed to file a list as required by law." Section 78 gives to the taxpayer a right to appeal to the Superior Court upon the same conditions.

The list referred to is the list of his estate not exempt from taxation which, in response to a notice of the assessors, every taxpayer is required to hand in to the assessors. No list of any kind was handed in as required by the assessors until long after the time specified in the notice. It is not contended by the petitioners that the assessors found that there was either a reasonable excuse or good cause for the delay; and the appellate court has expressly found that " the petitioners have not shown a reasonable excuse for their delay in not filing a list of personal property within the time specified in the notice given by the assessors for the bringing in of lists, and that there was no good cause for their delay in not doing so." One of the grounds of the defense is that this finding of the appellate court constitutes a bar to the granting of any relief by that court to the petitioners.

Shortly stated, the question is whether, in a complaint filed under R. L. c. 12, § 77 or § 78, the appellate board can make any abatement of a tax where the complainant has not brought in to the assessors a list as required by § 41 of that chapter within the time specified in the notice, and is not found, either by the assessors or by the appellate board or court, to have had any reasonable excuse or good cause for the delay. Although the precise language of the section would seem to be quite decisive, still, inasmuch as the petitioners have made an elaborate argument, based as well upon a laborious comparison of the statutes past and present as upon other considerations, to the effect that the

question should be answered in the affirmative, and inasmuch also as the question is of considerable pecuniary importance to the parties in this case, and moreover is of general importance as one of practice, it seems well to consider it somewhat at length.

It is useful to look into the history of the legislation so far as it relates to the matters involved in the question. In the colony laws there does not seem to have been any provision for the furnishing of lists : and it was provided that if a taxpayer could satisfy the assessors that he was "overvalued" he, in the quaint language of the times, could be "eased" by them, and if they refused he could appeal to the county court ; Mass. Col. Laws, (Whitmore's ed.) 23 ; Anc. Chart. 69, 70 ; and in the early part of the provincial period, with the exception of the provision contained in the special tax act of 1692–3, c. 41, §§ 5, 6, 1 Prov. Laws, 93, 94 ; 1694–5, c. 2, §§ 5, 6, 1 Prov. Laws, 167, 168, the law as to the right of abatement seems to have continued substantially the same. Prov. St. 1692–3, c. 28, § 6 ; 1 Prov. Laws, 66. (Also Anc. Chart. 250.) Prov. Sts. 1692–3, c. 41, § 2 ; 1699–1700, c. 26, § 8 ; 1 Prov. Laws, 92, 408. See also Prov. Sts. 1697, c. 6, § 5 ; 1697, c. 23, § 6 ; 1698, c. 15, § 5 ; 1698, c. 24, § 9 ; 1699–1700, c. 14, § 6 ; 1 Prov. Laws, 281, 305, 340, 362, 387. But as early as 1715 the annual or special tax acts provided that the assessors before making the assessment should call upon the inhabitants to bring in "true and perfect lists of their polls and rateable estate," and imposed a fine upon any one who should bring in a false list; and this form of legislation continued for a number of years. The bringing in of such a list however was not made a condition precedent to a right to an abatement, either by the assessors or by the county court. Prov. St. 1715–16, c. 11, §§ 4, 5 ; 2 Prov. Laws, 22. See also, among others, Prov. Sts. c. 1716–17, c. 12, § 4 ; 1717–18, c. 7, § 4 ; 1718–19, c. 13, § 5 ; 1719–20, c. 7, § 4 ; 1720–21, c. 4, § 4 ; 1721, c. 4, § 4 ; 1722–3, c. 8, § 4 ; 1723–4, c. 8, § 4 ; 1728–9, c. 14, § 4 ; 1734–5, c. 13, § 5 ; 2 Prov. Laws, 57, 85, 117, 148, 179, 217, 256, 298, 515, 735. Compare Prov. St. 1730, c. 1 ; 2 Prov. Laws, 549.

But in Prov. St. 1735–6, c. 13, § 5 ; 2 Prov. Laws, 780, there came a radical change. The section is so significant upon the question before us as to justify a liberal quotation of its exact language :

" The assessors . . . in convenient time before their making the assessment, shall give seasonable warning to the inhabitants, . . . [here follows the manner of giving the notice] . . . to give or bring in to the assessors true and perfect lists of their polls and rateable estates; and if any person or persons shall neglect or refuse so to do, or bring in a false list, it shall be lawful to and for the assessors to assess such person or persons according to their known ability in such town, in their sound judgment and discretion, their due proportion to this tax, as near as they can." It imposes a fine of twenty shillings upon each person " convicted by legal proof, in the judgment of the assessors, of bringing in a false list; the said fines to be for the use of the poor of such town or district where the delinquent lives, . . . saving to the party aggrieved at the judgment of the assessors in setting forth such fine, liberty of appeal therefrom to the Court of General Sessions of the Peace within the county, for relief, as in case of being overrated." Then follows this provision : " And if any person or persons shall not bring in a list of their estate as aforesaid to the assessors, he or they so neglecting, shall not be admitted to make application to the Court of Sessions for any abatement of the assessment laid on him."

The language is plain and unambiguous. While it gives the right of appeal from the judgment of the assessors as to the question whether a list is true or false, it distinctly says a person who does not bring in a list shall not be admitted to apply to the court of sessions for an abatement. The refusal of the right to go to the court of sessions for an abatement is accentuated by the fact that upon the question whether a list is false there is an appeal to that court. The whole question of appeal to the court from the judgment of the assessors was before the law-making power and the rights were carefully separated and distinctly defined. Upon one question there was the right of appeal; on the other there was none. Probably the assessors, at least before the committal of their warrant to the tax collector, could have " eased " a taxpayer if they were satisfied that he was " overvalued "; and in considering this question the law presumes that they would act, not capriciously or without restraint, but according to their best judgment and under the obligation of their official oath. But whether their decision

was right or wrong, the taxpayer was bound by it. He was entirely in their hands and at their official mercy.

Thus continued the law for half a century ; and every annual tax act, and every special tax act (so far as disclosed by an examination intended to be reasonably thorough), contained a clause substantially like the one we have just been considering. Prov. St. 1735–6, c. 13, § 5 ; 1736–7, c. 7, § 5 ; 1737–8, c. 14, § 5 ; 1740–41, c. 8, § 5 ; 2 Prov. Laws, 780, 812, 903, 1034 *et passim*. Prov. Sts. 1743–44, c. 9, § 5 ; 1744–5, c. 9, § 5 ; 1748–9, c. 1, § 5 ; 1756–7, c. 1, § 5 ; 3 Prov. Laws, 99, 167, 401, 977 *et passim*. Prov. Sts. 1757–8, c. 2, § 5 ; 1758–9, c. 1, § 5 ; 1759–60, c. 2, § 5 ; 1760–61, c. 11, § 5 ; 1766–7, c. 6, § 5 ; 1767–8, c. 8, § 5 ; 4 Prov. Laws, 16, 155, 262, 397, 898, 972 *et passim*. Prov. Sts. 1769–70, c. 1, § 5 ; 1770–71, c. 7, § 7 ; 1774, c. 8, § 5 ; 1777–8, c. 13, § 7 ; 1779–80, c. 12, § 7 ; 1780, c. 16, § 8 ; 5 Prov. Laws, 19, 105, 408, 758, 1112, 1432. St. 1780, c. 43. St. 1781, c. 16, c. 28. St. 1782, c. 65. St. 1784, c. 25.

It may be remarked in passing that an examination of the provincial statutes above cited shows conclusively that the idea expressed by Metcalf, J., in giving the opinion of the court in *Winnisimmet Co.* v. *Assessors of Chelsea*, 6 Cush. 477, 481, that " by the provincial statutes . . . a party, aggrieved at the sum apportioned on him by assessors, and being refused an abatement by them, might appeal to the sessions for an abatement, in all cases, as a matter of right," was erroneous so far at least as respects the law after 1735.

The next material change was made by the general statute of 1785, c. 50, § 9, which, after the usual provision for the bringing in of a list to the assessors, provided further that " if any person or persons, shall not bring in a list of their estates, as aforesaid, to the assessors, he, she, or they so neglecting or refusing, shall not be admitted to make application to the Court of General Sessions of the Peace, for any abatement of the assessment so laid on him, her or them ; unless such person or persons shall make it to appear to the said court, that it was not within the power of him, her, or them, to deliver to the assessors respectively, a list of his, her, or their rateable estate, at the time appointed for that purpose." The change made by this statute was not against the taxpayer but was manifestly in his favor. It is to be noted

that this change was made not in a tax act but in a general law relating to assessors, their power and authority. Inasmuch as it was a general law applicable to all taxes there was no further occasion for inserting in each special or annual tax statute a provision on the subject; and an examination of the subsequent tax acts shows that they contain no special provision relating to the right of abatement. See for example Sts. 1787, c. 56; 1788, c. 67 a; 1789, c. 49; 1795, c. 11; 1796, cc. 6, 51; 1797, c. 60; 1805, c. 119.

Except for the substitution of county commissioners for the Court of General Sessions of the Peace as the appellate board, thus stood the law until the Revised Statutes. By Rev. Sts. c. 7, § 40, it is provided that "No person shall have any abatement made by the commissioners, unless he shall have brought in a list of his estate to the assessors, or shall show good cause for not having so done, and unless he shall, if required by the assessors, have made oath to the truth of the same." As originally reported by the commissioners on the revision of the statutes it read thus: "No person shall be entitled to have any abatement made, either by the assessors, or county commissioners, or other officers mentioned in the preceding section [meaning other public officers in the respective counties who by law exercise the powers of county commissioners] unless he shall have brought in a list of his estate to the assessors, or shall show good cause for not having so done." Report of Commissioners on Rev. Sts. c. 7, § 42. In a note to this section the commissioners say that "This provision is submitted for the purpose of removing an ambiguity in the existing law — that is, whether the present act, (1785, c. 50, §§ 9, 10,) which denies abatements in cases where lists are not brought in, authorizes both assessors and county commissioners, or only the latter, to refuse abatements in such cases." The legislative committee to whom the whole report of the commissioners was referred for consideration recommended that the following amendments be made, namely, first that the clause "or other officers mentioned in the preceding section" be stricken out, and by adding at the end of the section "and unless he shall, if required by the assessors, have made oath to the truth of the same." Both amendments were adopted, the first probably because there were

no officers who under the then existing laws held the power of county commissioners as to the abatement of taxes. As thus amended by the committee, the prohibition as to making abatements except under the conditions named in the section extended as well to the assessors as to county commissioners. That was not satisfactory to the Legislature, and that body, with the issue sharply before it, struck out the prohibition so far as respected the assessors, but let it stand only as to the county commissioners, thereby plainly showing its determination that the right to an abatement where no list had been filed should be different before the assessors from that before the appellate board. Previous sections of the same chapter (c. 7) provided that the list should be brought in within the time mentioned in the notice given by the assessors (§ 19) ; that in the absence of such a list the assessors should estimate the estate (§ 23); and that such estimate should be conclusive upon a person who had not brought in a list unless he could show a reasonable excuse for the omission (§ 24).

In *Winnisimmet Co.* v. *Assessors of Chelsea*, 6 Cush. 477, it seems to have been thought that under the provisions of this statute it was in the power of the assessors to make an abatement if seasonably asked for, although no list had been carried in. "But," say the court, " after they have refused to make an abatement, the provision is peremptory, that it shall not be made by the county commissioners, (the Court of Common Pleas, in the present cases,) unless a list has been carried in, and sworn to, if required. If a party intends to enter upon a litigation, he must prepare himself by taking the prerequisite measures prescribed by the statute." See also *Porter* v. *County Commissioners*, 5 Gray, 365, for a full discussion of this subject. It was argued by the petitioners in that case that under St. 1853, c. 319, § 3, it was sufficient to sustain an appeal if the list was given at any time before the application for an abatement. But it was said by Shaw, C. J. (p. 368) : " This argument is plausible, but we think not sound. It overlooks a distinction, kept up in these provisions for taxation, between the power of the assessors to abate the tax of an individual, and the right of such individual to appeal from the decision of the assessors to a tribunal, to some extent judicial, originally the court of sessions, now the

county commissioners, to revise the final decision of the assess-
ors. The law seems to have been willing to trust the same
board of assessors, who made the assessment originally, to
correct any error into which they themselves may have fallen.
Knowing the grounds on which they at first proceeded, whether
with or without a list given in, if the individual could satisfy
them that, in his particular case, they had overrated him, they
might make an abatement. But if a party intends to put him-
self upon his strict rights, and secure a right to appeal to a
higher tribunal, who may proceed upon other views of the law,
and other evidence of the facts, than those acted on by the
assessors, he should put himself right at the outset, by filing his
list before an assessment. This distinction is made as well in
statutes formerly in force, as in the Rev. Sts." See also *Otis Co.*
v. *Ware*, 8 Gray, 509; St. 1857, c. 306, does not seem to have
made any material change in the law affecting this matter.

In Gen. Sts. c. 11, § 46, the law is stated thus: " No person
shall have an abatement unless he has filed with the assessors a
list subscribed by him of his estate liable to taxation, and made
oath that it is full and accurate according to his best knowledge
and belief. When such list is not filed within the time specified
by the assessors for bringing it in, no complaint from the judg-
ment of the assessors shall be sustained by the county commis-
sioners, unless they are satisfied that there was good cause why
such list was not seasonably brought in." In *Charlestown* v.
*County Commissioners*, 101 Mass. 87, 90, it was held that the
first branch of this section was intended to be " a peremptory
and absolute denial of all right to have an abatement without
first filing with the assessors the list under oath," and that
under the second branch, even when such a list is filed, if it is
not filed within the time specified by the assessors for bringing
in the lists, a complaint can be maintained before the county
commissioners only when " they are satisfied that there was
good cause why such list was not seasonably brought in."

St. 1865, c. 121, providing that, where the list is not filed
within the time specified in the notice, the assessors shall not
afterwards abate any part of the tax on personal estate unless
the tax exceeds by more than fifty per cent the amount which
would have been assessed if the list had been seasonably brought

in, etc., has no application whatever to proceedings before the county commissioners. Before this statute, while there was no appeal to the county commissioners where a list had not been filed within the time prescribed in the notice of the assessors, yet the taxpayer by subsequently filing a list could apply to the assessors and they could reduce the tax to its proper size. The plain purpose of this statute was to limit the power of the assessors as to the cases in which they could abate and the amount of abatement they could make. It in no way concerned the jurisdiction of the county commissioners or the right of the taxpayer to appeal to that board.

Gen. Sts. c. 11, § 46, was re-enacted in Pub. Sts. c. 11, § 72, but with the addition of these words, "and except in cases provided for in the following section." The "following section" is substantially like St. 1865, c. 121, except that in the place of the words " they [the assessors] shall not afterwards abate any part of the tax " are found the words "no part of the tax . . . shall be abated." That is to say, the clause applying expressly to the assessors is apparently changed to a clause applicable to any tribunal having jurisdiction of a complaint for abatement. And it is argued with force by the petitioners that under these two sections, namely, §§ 72, 73, a taxpayer had on appeal the same right to be heard by the county commissioners as originally by the assessors, even if he had filed no list within the time prescribed by the notice. As thus construed these two sections would have made a great change in the right of the taxpayer to appeal from the assessors as it had existed in the Province and Commonwealth ever since 1735. These two sections were enacted exactly as reported by the commissioners on the Public Statutes, and there is nothing in their report to show that they intended to change the previous law on this subject. But it is unnecessary to consider whether the view of the petitioners as to the true construction of these two sections is correct. The language of the sections of R. L. c. 12 upon which the case turns is very different.

By § 74 of that chapter it is provided that no person " shall . . . have an abatement, except as otherwise provided, unless he has brought in to the assessors the list of his estate as required by " the notice. And if the list is not filed within the time

specified by the notice, then only a certain prescribed part of the tax shall be abated. The next material section is § 77, the substance of which is stated at the beginning of this opinion.

Whatever doubt may have been thrown upon the law on this subject by the Public Statutes, or whatever interpretation may be given to the sections therein contained as to it, the whole subject seems to have been more carefully considered in the revision of 1902; and the change, if any, made in the former practice by the Public Statutes, was rectified so as to leave the law as it stood previous to the Public Statutes.

There can be no doubt that by the express language of R. L. c. 12, § 77 and 78, when considered in connection with the other provisions of the same chapter and read in the light of previous legislation upon the subject, the county commissioners have no power to abate a tax where the list was not brought in within the time specified in the notice given by the assessors before making the assessment, unless either the assessors or the county commissioners find that there was good cause or reasonable excuse for the delay. The Superior Court has simply the same jurisdiction as the county commissioners (§ 78). It follows that upon the facts found in this case, as hereinbefore stated, the petition should be dismissed.

It becomes unnecessary to consider the other grounds of defense. According to the terms of the report "judgment is to be entered upon the finding in favor of the respondents, with such costs and expenses as they may be entitled to, to be taxed by the Superior Court"; and it is

*So ordered.*