# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

CENTRAL NATIONAL BANK *vs.* CITY OF LYNN.

SAME *vs.* SAME.

Essex.    November 29, 1926. — March 12, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*National Bank*, Taxation.  *Tax*, Abatement, Assessment.  *Jurisdiction.*
*Waiver.  Practice, Civil*, Complaint for abatement of tax.  *Statute*, Con-
struction.  *Constitutional Law*, Taxation.  *Words*, "Rate."

A statement by a national bank to assessors of taxes does not fulfil the
requirement of G. L. c. 63, § 4, unless it is "on oath."

The Superior Court has no jurisdiction to consider a petition under G. L.
c. 59, § 61, by a national bank for abatement of taxes assessed under
G. L. c. 63, § 1, unless the statement required by G. L. c. 63. § 4, has
been filed "on oath"; the requirement of the oath being jurisdictional,
it cannot be waived.

An action of contract under G. L. c. 60, § 98, to recover a tax assessed upon
a national bank under G. L. c. 63, § 1, and paid under protest cannot be
maintained unless the tax was wholly void: where there is property
subject to taxation and the essential ground for complaint is excessive
valuation or excessive tax, the sole and sufficient remedy is by a petition
for abatement, which is a remedy open to national banks as well as to
all other taxpayers.

The tax upon shares of a national bank authorized by G. L. c. 63, § 1, is
intended to be assessed in accordance with the requirements of U. S.
Rev. Sts. § 5219, that it shall not be at a greater rate than is assessed
upon other moneyed capital in the hands of individual citizens of such
State, and that the "rate" established shall be such that an assessment

shall be levied upon the valuation ascertained according to the standard of "fair cash value" established by another part of the section so as to impose upon the shares of stock in national banks "such practical equality of taxation" as is reasonably attainable in view of the differing situations of that property as compared with other moneyed capital coming into competition with national banks and subject to taxation within the Commonwealth.

If, by reason of changes, since the enactment of the statutory provisions now embodied in G. L. c. 63, § 1, in the law as to taxation of "other moneyed capital" than that of national banks, the "rate" hitherto used in assessing taxes upon shares of stock in national banks works general discrimination against those shares, it becomes the duty of assessors to fix a rate which will avoid discrimination and comply with the dominant purpose of the statute that the burden of taxation borne by such shares of stock be substantially equal to and not in excess of that borne by "other moneyed capital" of the kind described.

A failure by the assessors to fix a rate for a tax under G. L. c. 63, § 1, to conform to the requirements of U. S. Rev. Sts. § 5219 after the statutory changes above described, which results in a rate as established by them upon the national bank shares being greater than that upon "other moneyed capital" in the Commonwealth, renders the tax excessive but not wholly void; and the remedy of the national bank therefore is by complaint for abatement under G. L. c. 59, § 65, and not by an action of contract under G. L. c. 60, § 98.

COMPLAINT, filed in the Superior Court on November 22, 1921, for the abatement of a tax assessed under G. L. c. 63, § 1. Also, an action of

CONTRACT for recovery of taxes alleged to have been exacted illegally. Writ dated November 21, 1921.

In the Superior Court, the cases were heard together by *Quinn*, J., without a jury. Material evidence is stated in the opinion.

In the first case the judge ruled at the request of the respondent that the list filed by the complainant with the assessors did not meet the requirements of law and dismissed the complaint. The complainant alleged exceptions.

In the second case the judge found for the plaintiff in the sum of $17,297.58, and the defendant alleged exceptions.

*H. R. Mayo*, for the complainant and plaintiff.

*S. H. Hollis*, for the respondent and defendant.

RUGG, C.J. These are proceedings to recover a tax for the year 1921 paid under protest by the plaintiff to the defendant. One is a complaint under G. L. c. 59, § 65, for refusal by the

assessors to grant an abatement of the tax; the other is an action of contract to recover the tax under G. L. c. 60, § 98. Both rest on the ground, as alleged, that the tax was illegally assessed.    Each proceeding was seasonably brought.

The complainant and plaintiff is a national banking association established under the statutes of the United States, having its usual place of business at Lynn.    Its contention is that, although the provisions of our statutes respecting the taxation of shares in national banks as they existed prior to 1917 had been held to be valid and in conformity to the provisions of the controlling act of Congress, in *Bank of Redemption* v. *Boston*, 125 U. S. 60, yet since the passage of the income tax law, now G. L. c. 62, which became effective as to taxation for the year 1917, the previously established method of taxation of shares of stock in national banks has become illegal, because other moneyed capital in the hands of individual citizens of the Commonwealth employed in competition with national banks now is taxed at a much lower rate.

1. The complainant is not entitled to relief upon the complaint for abatement.    The reason is that there has been no compliance with all the statutory mandates which must be met before there can be an abatement.    It is provided by G. L. c. 63, § 4, that the cashier of every national "bank shall make and deliver to the assessors . . . a statement on oath showing the name of each shareholder" in such detail as is there specified.    The cashier of the complainant bank in fact did file with the assessors a list satisfying the statute in every particular except that it was not sworn to.    The oath is imperative under our statutes.    The requirement for the oath was not enacted for the benefit of the assessors, but for the protection of the public and in the general interest.    It cannot be waived by any act of the assessors.    *Winnisimmet Co.* v. *Chelsea*, 6 Cush. 477, 483.    *Amherst College* v. *Amherst*, 193 Mass. 168.    *Boston Rubber Shoe Co.* v. *Malden*, 216 Mass. 508, 511.    *Parsons* v. *Lenox*, 228 Mass. 231.    *Dexter* v. *Beverly*, 249 Mass. 167, 169.    The filing of the "statement on oath" is a condition precedent to the maintenance by the taxpayer of a petition for an abatement.    The right to

maintain a complaint for abatement does not come into existence until the sworn statement described in the statute has been filed. No tribunal has jurisdiction to consider the question whether an abatement ought to be made unless such sworn statement has first been filed. *Otis Co.* v. *Ware,* 8 Gray, 509, 511. *Charlestown* v. *County Commissioners,* 101 Mass. 87, 90. *Sears* v. *Nahant,* 205 Mass. 558, 569. *Boston Rubber Shoe Co.* v. *Malden,* 216 Mass. 508, 512. *Dexter* v. *Beverly, supra.* Compare *Sterling* v. *Leyland & Co. Ltd.* 242 Mass. 8, 13; *Miller* v. *Rosenthal,* 258 Mass. 368; *William Danzer & Co. Inc.* v. *Gulf & Ship Island Railroad,* 268 U. S. 633, 636, 637. The words of G. L. c. 59, § 61, are that "A person shall not have an abatement" unless the required list has been filed with the assessors. Language hardly can be more explicit. "Person" as thus used includes a national bank. *National Bank of Commerce* v. *New Bedford,* 155 Mass. 313, 316. Said § 61 comprehends and is applicable to the statement on oath to be filed by the cashier of a national bank. While this was not categorically decided in the case last cited, it there was held that the filing of the list by the cashier of the bank was sufficient basis for a petition for abatement by the bank. As disposing of the argument that the list must be filed by the shareholders, it was said at page 316 that "we are of opinion that the substitution of the bank for the shareholders is more thorough-going than is recognized by this argument. The bank is the person to file the list, as it is the person to pay the tax, to petition for abatement, and to take an appeal." The irresistible inference from this decision is that the filing of a list as required by c. 63, § 4, is a condition precedent to the maintenance of a petition for abatement under c. 59, § 61, by a national bank.

This is the reasonable construction of the statutes. There is nothing to indicate that the Legislature intended to except national banks from a general requirement as to filing sworn lists resting upon other members of the community. While a complaint for abatement may be maintained where the tax is wholly illegal, the filing of the list is nevertheless a condition precedent to the existence of the right to abatement.

*Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 498. The cases of *Lowell* v. *County Commissioners*, 146 Mass. 403, and *Essex Company* v. *Lawrence*, 214 Mass. 79, afford no support to any contrary theory because they relate to a different statute and divergent facts.

It follows, from the terms of the governing statutes and the decisions rendered touching them already cited, that the circumstance, that the chairman of the board of assessors of the defendant accepted, within the time specified in the statute and without objection and in accordance with a practice of many years, the unsworn statement of the cashier of the complainant containing the requisite information, is of no consequence in this connection. Plainly the sovereign power may create reasonable conditions as prerequisites to the enforcement of rights in the courts. No further discussion is needed to demonstrate that a statement under oath is a reasonable condition precedent to judicial inquiry into the legality of taxes. The rulings that the list filed by the complainant did not comply with the law, and that the complaint for refusal of the assessors to abate the tax be dismissed, were right.

2. The pertinent facts respecting the action of contract to recover the taxes here in question as displayed in the record are in effect that the capital stock of the plaintiff is $200,000, divided into two thousand shares; that the assessors of the defendant determined as of April 1, 1921, that the value of each share of the capital stock of the plaintiff was $245, and levied a tax on all the stockholders of $28.48 on each $1,000 of fair cash value of shares owned by them, that being the rate fixed for the year 1921 on real estate and tangible personal property in Lynn. The tax thus levied, amounting to $13,916, was seasonably paid by the plaintiff, G. L. c. 63, § 2, under sufficient written protest. G. L. c. 60, § 98. *Carleton* v. *Ashburnham*, 102 Mass. 348, 350. It is stated in the exceptions: "During the years 1920 and 1921 said bank paid dividends to its shareholders at the rate of $10 per share for each year, said dividends aggregating $20,000 per year. Taxes on all taxable bonds, notes, taxable securities and other moneyed capital in the hands of individual

citizens of Massachusetts were assessed and levied in the year 1921 under G. L. c. 62; and in this connection see §§ 49 *et seq.* of said chapter 62. A substantial part of such moneyed capital was in the hands of individual taxpayers, and the tax levied and collected on such bonds, securities and moneyed capital was very considerable and was material in amount, and such moneyed capital came into competition with the money of said plaintiff bank and in competition with the money of national banks in the Commonwealth in general. There was evidence that moneyed capital in bonds, notes and stocks competed with the plaintiff bank in 1921, and that money in the hands of individual bankers during the year 1921 and for a period of years prior to the date of trial had competed with the money of the plaintiff bank and with the plaintiff bank, and that many private individuals and bankers were loaning money in competition with the plaintiff bank and its money. There was evidence to the effect that the tax assessed in 1921 under G. L. c. 62 amounted to approximately $8,000,000, on 'interest and dividends'; and while there was no evidence as to what percentage of that total represented six per cent tax on interest alone, there was testimony from the assistant director of the income tax division, department of corporations and taxation of the Commonwealth that the tax levied and collected on interest apart from dividends was a very considerable amount — was a comparatively large amount. There was also evidence that in the year 1921 the number of tax returns of income filed in the Commonwealth under G. L. c. 62 was two hundred eighty six thousand four hundred, of which number two hundred fifty-seven thousand three hundred seventy-two were filed by individuals on 'Form 1', so called, of the income tax return blanks issued by the income tax division."

An action of contract, such as is the one at bar, to recover a tax under G. L. c. 60, § 98, cannot be maintained unless the tax is wholly void. That has been frequently determined. *Harrington* v. *Glidden*, 179 Mass. 486, where earlier decisions are collected and reviewed, affirmed in *Glidden* v. *Harrington*, 189 U. S. 255. *Sullivan* v. *Ashfield*, 227 Mass. 24. *Collector of Taxes of West Bridgewater* v. *Dunster*, 231 Mass. 291, 293.

That point, so far as it is a matter of the law or the interpretation of the statutes of this Commonwealth, is foreclosed by these adjudications and is not now open to discussion. To the same effect are the decisions of the Supreme Court of the United States. *Gorham Manuf. Co.* v. *Tax Commission of New York*, 266 U. S. 265, 269, 270. *Western Union Telegraph Co.* v. *Gottlieb*, 190 U. S. 412, 427. Where there is property subject to taxation and the essential ground for complaint is excessive valuation or excessive tax, the sole and sufficient remedy is by a petition for abatement. It is immaterial whether there has been a valuation of property at an amount higher than its real worth, the inclusion of property not rightly subject to taxation to the aggrieved taxpayer, the calculation of the tax upon a wrong or an inapplicable principle, or other invalidity, the statutes afford ample means for obtaining relief and securing justice by a complaint for abatement. Whatever may be the basis of overassessment, the exclusive and adequate remedy is afforded by abatement proceedings under G. L. c. 59, §§ 59–74, both inclusive. *Hicks* v. *Westport*, 130 Mass. 478. *Flax Pond Water Co.* v. *Lynn*, 147 Mass. 31. *All Saints Parish* v. *Brookline*, 178 Mass. 404, 410. *Harrington* v. *Glidden*, *supra*, page 493, and cases cited, affirmed in *Glidden* v. *Harrington*, *supra*. *Sears* v. *Nahant*, 208 Mass. 208, 210, and cases there collected. *Sears* v. *Nahant*, 221 Mass. 435, 436. *Sullivan* v. *Ashfield*, *supra*, page 26. The remedy afforded by the statutes as to abatement of an excessive tax is of course open to national banks as well as to all other taxpayers. *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313. *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257. Remedies of this nature "must be exhausted as a necessary prerequisite to a judicial challenge of the tax." *First National Bank of Greely* v. *Weld County*, 264 U. S. 450, 455. *Burrill* v. *Locomobile Co.* 258 U. S. 34. *Stanley* v. *Supervisors of Albany*, 121 U. S. 535, 549, 550.

The contention of the plaintiff is that the taxes here in question, thus assessed and collected, are violative of the provisions of the national banking act, U. S. Rev. Sts. § 5219. "National banks are not merely private moneyed

institutions but agencies of the United States created under
its laws to promote its fiscal policies; and hence the banks,
their property and their shares cannot be taxed under State
authority except as Congress consents and then only in
conformity with the restrictions attached to its consent."
*First National Bank of Guthrie Center* v. *Anderson*, 269 U. S.
341, 347. *Des Moines National Bank* v. *Fairweather*, 263
U. S. 103, 106.

The permission extended by Congress to the several States
to tax the shares of stock in national banks is in said § 5219
in these words: "the legislature of each State may determine
and direct the manner and place of taxing all the shares of
national banking associations located within the State, sub-
ject only to the two restrictions, that the taxation shall not
be at a greater rate than is assessed upon other moneyed
capital in the hands of individual citizens of such State, and
that the shares of any national banking association owned
by non-residents of any State shall be taxed in the city or
town where the bank is located, and not elsewhere."    Pur-
suant to the authority thus conferred there has been enacted
G. L. c. 63, § 1, the relevant words of which are: "All shares
of stock in banks . . . existing by authority of the United
States . . . and located in the Commonwealth, shall be
assessed to the owner thereof in the town where such bank
is located, and not elsewhere, in the assessment of State,
county, city and town taxes, whether such owner is a resident
of said town or not.    They shall be assessed at their fair
cash value on April first, after deducting therefrom the pro-
portionate part of the real estate belonging to the bank, at
the same rate as other moneyed capital in the hands of
citizens is by law assessed . . . "; and § 2 of the same
chapter: "Every such bank shall pay the tax so assessed . . .
at the time when other taxes in the town become due . . . ."
By G. L. c. 63, § 7, shareholders in national banks are liable
to taxation only under that chapter.    Other pertinent pro-
visions of the tax law are G. L. c. 59, § 4: . . . "Except
as provided in the following section and in chapters sixty-two
and sixty-three, personal estate for the purpose of taxation
shall include: . . . Second, Money at interest, and other

debts due the person to be taxed more than he is indebted or pays interest for [with exceptions not here material]. . . . Third, Public stocks and securities, bonds of railroads and street railways and stocks in turnpikes, bridges and moneyed corporations within or without this Commonwealth." § 5. "The following property . . . shall be exempt from taxation: . . . Twenty-seventh, Property the income of which is taxed under chapter sixty-two, or would be taxable thereunder if the property yielded income [with exceptions not here significant] . . . ." § 38. "The assessors . . . shall at the time appointed therefor make a fair cash valuation of all the estate, real and personal, subject to taxation therein." By G. L. c. 62, which relates to taxation on incomes, it is provided in § 1: "Income of the classes described in subsections (a) (b) (c) and (e) received by any inhabitant of the Commonwealth during the preceding calendar year, shall be taxed at the rate of six per cent per annum. (a) Interest from bonds, notes, money at interest and all debts due the person to be taxed [with exceptions not here applicable] . . . (b) Dividends . . . on shares in all corporations and joint stock companies organized under the laws of any State or nation other than this Commonwealth, except banks the shares of which are subject to taxation under section one of chapter sixty-three . . . ." It is provided by G. L. c. 62, § 49, that "All property owned by a resident of the Commonwealth on April first in any year, which during the preceding calendar year has produced for such owner any income taxable under this chapter, shall, despite anything in this chapter, be subject to taxation to such owner in accordance with chapters fifty-nine and sixty, if such owner does not make to the commissioner a full return of his taxable income from such property . . . ," as required by the statutes.

The method of taxation thus framed has been in its essential features in operation since St. 1871, c. 390, § 1; see also St. 1868, c. 349, § 1, and St. 1865, c. 242, §§ 1, 3. It was valid because "other moneyed capital in the hands of individual citizens" of the Commonwealth employed in competition with national banks also was assessed at its fair cash value and taxed at the same rate. After the de-

cision in *Bank of Redemption* v. *Boston,* 125 U. S. 60, no question could arise as to the validity of the tax thus assessed and levied until the income tax law, enacted pursuant to authority conferred by art. 44 of the Amendments to the Constitution, went into operation in 1917, now G. L. c. 62. By that law provision was made whereby the individual citizen, owning moneyed capital employed in competition with national banks (with some exceptions including stock in trust companies from which contribution to the support of government is exacted otherwise), who made full return of his taxable income, was taxed at the rate of six per cent on the income derived from such capital, and was not taxed at the fair cash value of such capital except in instances where no such full return was made.

The argument urged in behalf of the plaintiff is that there has been to its harm a violation of U. S. Rev. Sts. § 5219, because shares of the bank were taxed at the rate of $28.40 per thousand of their fair cash value, while private individuals lending money in competition with banks were required to pay only $6 per hundred on the income received from such loans (provided they made full returns of their taxable income) and were exempt from all taxation based directly on the fair cash valuation of such loans. This argument is not founded on any change in the law, by which shares of stock in national banks are taxed, since it was upheld in 125 U. S. 60, but on the changes in the law respecting the taxation of other moneyed capital in the hands of individual citizens wrought by the income tax law, now G. L. c. 62. It does not seem to us necessary to consider the soundness of this argument, nor to determine whether the method of taxation and calculation of the tax adopted by the assessors of the defendant can be supported, nor to pass upon the effect of G. L. c. 62, § 49, imposing the former method of taxation (being the same in substance levied upon the plaintiff) upon the individual taxpayer who fails to make return of his income, nor to determine the weight in this connection of the excise tax on the corporate franchises of trust companies, competitors of national banks in many respects, under G. L. c. 63, § 55. Compare *A. J. Tower Co.*

v. *Commonwealth,* 223 Mass. 371.    Assuming, without so deciding, that this contention of the plaintiff is sound and in conformity to the law, it does not follow that the plaintiff is entitled to prevail in the present action.

It is manifest from the carefully worded provisions of the statutes of this Commonwealth that there was no intention on the part of the General Court to exempt shares of stock in national banks from taxation.    The contrary purpose is plain.    The words of G. L. c. 63, § 1, are definite and unmistakable that such shares "shall be assessed" and pay taxes.    Because of this positive legislative direction, the income received from such shares by inhabitants of the Commonwealth was explicitly exempted from taxation under G. L. c. 62, § 1, (b).    The shareholders are exempted from all other liability to taxation on such shares.    G. L. c. 63, § 7.    The underlying principle of the statutes is that all property employed in profit ought to and must bear its fair share of the financial burdens arising from the expenses of government.    It is a general principle that every rational presumption is made in favor of the validity of statutes, and that enforcement will not be refused unless conflict with a superior law is established beyond reasonable doubt. *Perkins* v. *Westwood,* 226 Mass. 268, 270.

Examining the tax here assailed in the light of these principles, it cannot be declared wholly illegal and void.    A definite standard for the assessment of the shares of stock in national banks for purposes of taxation is fixed by G. L. c. 63, § 1.    That standard is their "fair cash value."    The rate of taxation must be "at the same rate as other moneyed capital in the hands of citizens is by law assessed."    Such rate is plainly intended to be the same permitted by the Federal law in U. S. Rev. Sts. § 5219.    This rate is not rigidly established.    It is a plain inference from these words of the statute that the General Court intended to provide a rate of taxation in conformity to and not in excess of that permitted by the controlling Federal statute.    There is recognition in G. L. c. 63, § 1, of the supremacy of the Federal statute and adaptation to its terms by using almost the same essential words.    The word "rate" which is in

both the Federal and the State statutes is not defined. It is a flexible term. In each statute it refers for its ultimate interpretation to the burden of taxation imposed on "other moneyed capital" employed in such way either in State banks, in private banking, or in the loan, discount and investment features of banking. The word "rate" in our statute, like most other words, has different meanings dependent upon the context and the result intended to be accomplished. In this connection it is used in a generic and not a particular sense. It means that an assessment shall be levied upon the valuation ascertained according to the standard of "fair cash value" established by another part of the section so as to impose upon the shares of stock in national banks "such practical equality of taxation" as is reasonably attainable in view of the differing situations of that property, as compared with other moneyed capital coming into competition with national banks and subject to taxation within the Commonwealth. "Mathematical equality in the taxing of national bank shares and such other moneyed capital" is not required by said § 5219. *First National Bank of Guthrie Center* v. *Anderson, supra,* page 348. *Merchants' National Bank of Richmond* v. *Richmond,* 256 U. S. 635. "Rate" in this connection in our statute is not in every instance and for all time the necessary equivalent of percentage; but it requires the imposition of a pecuniary burden by way of impost for the support of government which will conform to that term of the consent by the United States to the taxation by the States of shares of stock in national banks, to the effect that there be no discrimination against such shares in any scheme of taxation and in favor to a material extent of other moneyed capital employed in substantial competition with national banks. Therefore, if by reason of changes in the law as to the taxation of such "other moneyed capital," the "rate" hitherto used in assessing taxes upon shares of stock in national banks works general discrimination against these shares, it becomes the duty of assessors to fix a rate which will avoid discrimination and comply with the dominant purpose of the statute that the burden of taxation borne by such shares of stock be sub-

stantially equal to and not in excess of that borne by "other moneyed capital" of the kind described.   This result follows from the governing design of G. L. c. 63, § 1, to which all its other parts are subsidiary, namely, that all "shares of stock" in national banks shall be assessed and bear a fair share of the burden of taxation so far as permitted by the laws of the United States.

It is plain that some tax was assessable on these shares under G. L. c. 63, § 1.   It was not the purpose of the Legislature that they should be free from taxation.   The only question of doubt was the precise amount of tax which lawfully could be assessed.   It was within the jurisdiction, and was the duty, of the assessors to determine what rate must be adopted for the tax on bank shares in order to produce a resultant tax burden in substance the same as that resting on other competing moneyed capital.   If a mistake was made in this determination, it was a mistake committed in the exercise of jurisdiction.   It did not go outside their jurisdiction as to subject matter.   The tax laid, therefore, was not wholly void.   The most that can be said is that it was excessive to a greater or less degree.   The question of excessiveness could have been fully tried on a petition for abatement brought in conformity to our statutes, and the correct amount ascertained.   *Sears* v. *Nahant,* 221 Mass. 435, 436.   *Sullivan* v. *Ashfield, supra,* page 26.   *People* v. *Weaver,* 100 U. S. 539.   *Pelton* v. *National Bank,* 101 U. S. 143.   *Supervisors* v. *Stanley,* 105 U. S. 305; *Stanley* v. *Supervisors of Albany, supra.   Hills* v. *Exchange Bank,* 105 U. S. 319, 322.   *People's National Bank* v. *Marye,* 191 U. S. 272, 279, 280.   It cannot be tried in an action to recover the tax. As already pointed out, that remedy lies only in instances where the whole tax is invalid.

The right of the Commonwealth to tax shares of stock in national banks arises solely because of the consent of the United States in said § 5219.   But for that consent, they could not be taxed by the States.   If, therefore, that consent permits a taxation less than the "proportional" taxes prescribed by c. 1, § 1, art. 4, of the Constitution, there is no violation of that requirement because it must yield to the

Constitution of the United States and the laws rightly enacted thereunder. See *Opinion of the Justices,* 195 Mass. 607. *Opinion of the Justices,* 234 Mass. 597, 607. *Opinion of the Justices,* 237 Mass. 591, 595.

The case of *Hanover National Bank* v. *Goldfogle,* 234 N. Y. 345, is distinguishable, because there a rigid rate on the book value of shares of national banks was prescribed by the statute and not left as here to be established by the assessors as events may require in order to equalize the tax on shares in national banks with the tax on other moneyed capital in competition with national banks.

Every argument urged by the plaintiff has been considered and discussed. While some difficulties might be found in the practical administration of the tax law, G. L. c. 63, as to shares of stock in national banks in connection with U. S. Rev. Sts. § 5219, and G. L. c. 62, in instances where that may become necessary, those difficulties do not appear to us to be insuperable, nor any more troublesome than other tax problems. Since the shares of stock were subject to some tax, this action at law cannot be maintained. The authorities which settle this point have already been cited. It follows that the requests of the plaintiff for rulings in the action at law ought not to have been granted, and that the defendant's request that the plaintiff could not maintain the action ought to have been granted.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions sustained.*