S. E. SOVINE *et al. v.* GEORGE S. WALLACE, *Trustee, et al.*

(No. 7773)

Submitted November 8, 1933. Decided December 12, 1933.

MAXWELL, PRESIDENT, and HATCHER, JUDGE, dissenting in part.

*George S. Wallace,* for appellant.
*C. E. Copen,* for appellees.

WOODS, JUDGE:

This is a suit by purchasers of various subdivisions of a larger tract to enjoin sale of the entire parent tract to satisfy certain outstanding notes secured thereby. The holder of the notes complains of the action of the chancellor in perpetuating the temporary injunction as to certain of the foregoing subdivisions.

On June 12, 1922, H. C. Hale purchased 101.6 acres of land at Hurricane, West Virginia, from W. A. Shepherd, and others; and, in addition to making a small cash payment, executed his thirteen promissory negotiable notes, totalling $6,341.58, payable to Shepherd, as attorney in fact, in six,

420

twelve, etc., months after date (the last falling due December 12, 1928), and transferred the property so purchased to H. G. Proctor, trustee, to secure the payment of such notes. Hale, thereupon, subdivided a portion of the tract into town lots. Approximately three-fourths of the entire acreage has been sold, of which 68.47 acres have been duly released of record. Of the remaining 7.14 acres sold, but not released, the lots purchased by Smithson, Waldeck, Wooten, Wheeler and Stover, have been paid for in full to either Hale or Proctor.

In May, 1927, and after the ninth note had become due, Proctor, in his own right, secured an assignment from Shepherd of notes nine to thirteen, inclusive, at the same time negotiating a personal loan from Mrs. Blair P. Wilson, in which said notes nine to thirteen, inclusive, were put up as collateral for his personal note for $3,000.00. Proctor states that the loan was negotiated for the purpose of securing the assignment; and that the transactions were practically simultaneous. Notes one to nine, inclusive, have been paid.

Proctor failed to meet certain payments on his $3,000.00 loan during 1931, and the following February, after due notice, the collateral (notes ten to thirteen, inclusive) was offered for sale at public auction, Mrs. Wilson becoming the purchaser thereof. In an endeavor to collect on the collateral, Mrs. Wilson found Shepherd financially involved, and threatening to resort to bankruptcy, if pressed, and Hale and Proctor claiming to be insolvent. However, Shepherd did make a payment of $1,000.00, leaving a balance (including interest) of $2,991.98 still owing on the four notes. George S. Wallace, at the instance of Mrs. Wilson, was later substituted for Proctor, as trustee, and directed to advertise the 101.6 acres for sale under the terms of the deed of trust. It was to restrain this sale that the present suit was instituted. Upon final hearing, the chancellor perpetuated the temporary injunction as to all lots or parcels paid for in full, regardless of whether the several purchasers had or had not secured releases.

The purpose of this appeal is to have such order set aside in so far as it restrains the sale of the property purchased by the five parties heretofore mentioned, who, while having paid the full purchase price to Hale or Proctor, never secured a release.

So far as the record discloses, Mrs. Wilson was a holder in due course of notes ten to thirteen, inclusive, and, being such, may avail herself of any rights attaching to the notes by virtue of the deed of trust. While the notes contained no reference to the trust deed, the latter makes specific reference to them. The property was transferred to the trustee, "to secure unto William A. Shepherd, attorney in fact, *or unto the owner or holder thereof,* the payment of thirteen promissory negotiable notes." So the purchasers were thereby charged with the duty of seeing that the note-holders were paid under the terms of the deed of trust and proper releases executed. The mere payment in full to Hale was not sufficient. Mrs. Wilson is entitled to go against the property to the extent provided for in the deed of trust.

The trust deed, which is in the usual form, contains the following provision: "It is covenanted and agreed between the parties hereto that that portion of the land fronting on the hard surface of the road and extending back 200 feet shall be released from the operation of the deed of trust at the rate of $1,000.00 per acre, and the land lying back of this 200 feet and extending to the right of way of the C. & O. Railway Company at the rate of $250.00 per acre, the remaining portion to be released at the rate of $200.00 per acre." The apparent purpose of this provision was to facilitate sales by Hale. The basis upon which releases were to be made was so scaled as to provide ample security to Shepherd at all times. Upon the sale of a fractional part of the real estate, Hale, by payment of an amount in proportion to its relation to an acre, was entitled to a release. If he paid the original payee, or any subsequent holder for value, $1,000.00, he was entitled to secure a release of an acre along the hard road, four acres along the C. & O., or five acres out of any portion of the remainder of the tract; and for any lesser sum, a release of a proportionate amount. As against Shepherd or Mrs. Wilson, appellees can still secure releases on the same ratio accorded Hale.

Hence, we reverse the action of the chancellor and remand the cause with direction that the unsold property be first subjected to sale, the injunction having been dissolved as to that portion in the final order appealed from; and, if such

unsold property does not satisfy appellant's debt, that the lots purchased by the five appellees herein be proceeded against to the extent above indicated, if necessary, but no further.

*Reversed and remanded.*

MAXWELL, PRESIDENT, and HATCHER, JUDGE, dissenting in part:

The trust deed in question provides, as quoted in the majority opinion, that the 101.6 acre tract shall be released from the trust "at the rate of" certain sums per acre, depending on the location of the acre. "At the rate of" is a flexible phrase, and its meaning in a particular instance must depend on the context and the subject matter. *Bank* v. *Lynn,* 259 Mass. 1, 11-12, 156 N. E. 42; 52 C. J. 1140. The trust deed herein was executed before the land was laid off in lots, and the instrument does not mention a lot division. The only measurement of the land given in the deed is that *by the acre.* Consequently, it would seem that a sum mentioned in the trust deed on the one hand and an acre of land on the other were the only two units contemplated by the parties in arranging for such releases. That conclusion is in conformity with an accepted definition of the word "rate" given by Webster: "Quantity, amount, or a degree of a thing measured per unit of something else." In other words, "rate" as used in the trust deed does not imply a percentage or proportion, but means simply the *payment required* for the *release of an acre.* See generally *Raun* v. *Reynolds,* 11 Cal. 14, 19. Consequently, we dissent from so much of the majority opinion as holds that a fractional part of an acre (i.e., a lot) shall be released from the trust upon the payment of a correlative fractional part of the sum fixed for the release of an acre.