HAMILTON COMPANY v. MASSACHUSETTS.

1. Questions not decided in the State court, because not raised and presented
   by the complaining party, will not be re-examined in this court on a
   writ of error under the twenty-fifth section of the Judiciary Act.
2. It is not sufficient that such a question might have arisen and been appli-
   cable to the case, unless it appears in the record that it did arise, and
   was applied by the State court in disposing of the controversy.
3. A statute of Massachusetts which requires corporations having a capital
   stock divided into shares, to pay a tax of a certain percentage (one-sixth
   of one per cent.) upon "the excess of the market value" of all such stock
   over the value of its real estate and machinery, is, under the settled course
   of decision in the State of Massachusetts on its constitution and laws, a
   statute which imposes a franchise tax.
4. The tax is lawful.
5. *Provident Institution* v. *Massachusetts* (last preceding case) affirmed.

APPEAL from the Superior Court of the Commonwealth
of Massachusetts.
   This case—which was one agreed on and stated in the court

below—raised, under some circumstantial variety,—the defendant in it there being a manufacturing company having capital stock,—the same substantial question raised in the two preceding cases of saving fund societies.   It was thus:

A statute of Massachusetts provides—

"SECT. 1. That the assessors of the several towns shall annually return to the treasurer of the commonwealth the names of all corporations ' having a capital stock divided into shares,' &c., and the value of the *real* estate and *machinery* for which each is taxed in such towns.

"SECT. 2. That every such corporation shall annually return to the same officer ' the amount of the capital stock of the corporation, and the par value and the cash market value of the shares, on the 1st day of May.'

"SECT. 5. That a board of commissioners shall ascertain the *excess of the market value* of all the capital stock of each corporation over the value of its real estate and machinery, and that the corporation shall annually pay to the commonwealth ' *a tax* of one and one-sixth per cent. upon such excess.' "

With this statute in force a return from the Hamilton Manufacturing Company, a corporation of the sort described, and incorporated by Massachusetts, showed that the cash market value of its capital stock did not exceed by more than $263,997 the value of its real estate, machinery, and of its other property, *provided* that from this last were *excluded* securities of the United States held by the company, and which, by the act of Congress authorizing their issue, were declared to be exempt from taxation by State authority, " whether held by individuals, corporations, or associations." But that with those securities included, the capital stock did exceed by a greater sum than that named the value of such real estate and machinery.

A tax being demanded by the State of Massachusetts on more than the $263,997 (supposing that the tax was laid at the rate prescribed), it necessarily fell—and of course unlawfully—on the exempted Federal securities, *if* the tax laid by the statute was one on *property*.

If, on the other hand, the tax was one on the franchise and privileges of the corporation, and such a tax, when operating as in this case, was lawful, then it was rightly demanded, even in so far as it might affect the securities of the United States. The Hamilton Company refused to pay the tax demanded; and suit was brought accordingly. The court below gave judgment for the whole sum demanded. The case was now here under the twenty-fifth section of the Judiciary Act.

Excepting therefore a matter apparently suggested in that court, but not pressed there or here, as to whether the company could, under its charter, rightly hold Federal securities, the questions now were,—

1. Whether the tax imposed by the State was to be regarded as a tax on property, or as a tax on the franchise and privileges of the corporation?

2. Whether, if the last, and when operating as it did here, it was lawful so far as affecting the Federal securities?

*Mr. H. L. Dawes, for the plaintiff in error; Mr. Allen, Attorney-General of Massachusetts, for that State, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Corporations as well as individuals are subject to taxation in Massachusetts, and with that view the assessors of cities and towns are required annually to return, on or before the first Monday of August, to the treasurer of the State, the names of all chartered corporations having a capital stock divided into shares, established in their respective cities or towns, or owning real estate therein, and the value of their real estate and machinery, for which they were taxed in such cities or towns, on the first day of May preceding such returns. Such corporations, if their stock is not exempted from taxation, State and municipal, by the laws of the United States, are also required annually, between the first and tenth days of May, to return to the State treasurer, under the oath of their treasurer, a complete list of their shareholders, with their places of residence, the number of

shares belonging to each, the amount of their capital stock, the corporation's place of business, and the par value and the cash market value of the shares on the first day of May.*

Commissioners are also constituted by the fifth section of the act, and they are required to ascertain from the returns, or otherwise, the excess of the market value of all the capital stock of every such corporation, not exempted as aforesaid, over the value of their real estate and machinery, if any, as returned by the assessors of the cities and towns; and having ascertained such excess, as required, it is made their duty, on or before the first Monday of October following, to notify the corporation treasurer of the result of their doings, and the provision is that every such corporation shall annually, on or before the first Monday of November succeeding, pay to the treasurer of the State a tax of one and one-sixth per cent. upon such excess.

Proper steps were taken by the commissioners, and the agreed statement shows that they duly ascertained the excess of the market value of all the capital stock of the defendant corporation over the value of their real estate and machinery, as returned by the local assessors, and that within the time required they notified the treasurer of the corporation of the ascertained result.

Cash market value of the capital stock, as ascertained, was twelve hundred and thirty thousand dollars, as appears by the agreed statement, and the value of the real estate and machinery, as actually returned by the local assessors, was nine hundred and fifty-nine thousand four hundred dollars, and the agreed statement also shows that the taxes upon that valuation as assessed to the corporation by the local assessors, were duly paid. Excess of the cash market value of the capital stock over their real estate and machinery, as ascertained by the commissioners, was two hundred and seventy thousand six hundred dollars, as agreed by the parties.

In addition to their real estate and machinery, the corporation defendants owned personal property standing on their

---

* Sessions Laws 1864, 132.

books as valued at two hundred and sixty-three thousand nine hundred and ninety-seven dollars and seventy-five cents, and also bonds of the United States to the amount of three hundred thousand dollars, which, it is conceded, were exempt from State taxation.

Amount for which they were taxed was two hundred and seventy thousand six hundred dollars, but they had on their books a balance of untaxed property, besides the bonds, of two hundred and sixty-three thousand nine hundred and ninety-seven dollars and seventy-five cents. They refused to pay the tax, and the State brought suit to recover the amount. Judgment was rendered in favor of the State for the sum of three thousand six hundred and fifteen dollars and seventy-six cents, which is the amount of the tax of one and one-sixth per cent. upon the whole excess of the cash market value of their capital stock, over the value of their real estate and machinery, as returned by the assessors. Dissatisfied with the judgment of the State court, the corporation defendants sued out this writ of error and removed the cause into this court.

1. Questions not decided in the State court, because not raised and presented by the complaining party, will not be re-examined in this court on a writ of error sued out under the twenty-fifth section of the Judiciary Act. Apart from the question of jurisdiction it is necessary that it shall appear that the question presented for decision in this court was raised in the State court, and that the decision of the State court was given as required in that section. Clear and necessary intendment that the question was raised and must have been decided as claimed, in order to have induced the judgment, is sufficient, but it is not sufficient to show that such a question might have arisen and been applicable to the case, unless it appears in the record that it did arise and was applied by the State court in disposing of the controversy.

2. Defendant corporation resisted the claim of the State in the State court solely upon the ground that they were not

liable under that act of the legislature to pay any tax at all to the State, because the cash market value of their capital stock did not exceed the returned value of their real estate and machinery, and the value of the bonds held by them which are exempt from State taxation.   On the other hand the State contended that the defendants were bound by virtue of that act to pay a tax to the State treasurer upon the whole excess of the cash market value, as ascertained, of their capital stock over the value of their real estate and machinery as returned by the assessors.

Liability to taxation in some form was conceded by the defendants except for the amount of their government securities, and the State did not claim any right to tax those securities or their real estate and machinery included in the lists furnished to the local assessors.   Obvious issue between the parties was whether the value of the bonds held by the defendants should or should not be deducted from the excess of the cash market value of their capital stock over the value of their real estate and machinery.   And the parties taking the same view as to the real issue between them, agreed that if the court was of the opinion that such a deduction should be made from the said excess as ascertained by the commissioners, then judgment should be entered for the defendants, otherwise for the plaintiff, for such an amount as in the opinion of the court the State is entitled to recover, with interest.

. Viewed in any light, the agreed statement of facts shows to a demonstration, that the only question in the record, not fully determined in the case just decided, is whether the tax imposed by the State is properly to be regarded as a tax on property or as a tax on the privileges and franchises of the corporation.   Such a tax so levied is clearly not proportional as is required by the State constitution in respect to rates and taxes, and consequently, if sustained at all, either in whole or in part, it must be as an exercise of the power conferred in the State constitution of imposing reasonable duties and excises upon " commodities " within the State.   Taxation, as contemplated in the provision under consideration.

on the corporations designated in the second section of the act, is without any reference to the amount required to be raised in the State on the actual property held by the corporation, and without any reference to the whole amount of property in the State liable to be assessed for State and municipal purposes.*

Regarded as a tax on property, therefore, the tax is plainly invalid, and cannot be supported for a moment, as the law, if construed as authorizing such a tax, is in direct contravention of the State constitution as understood from the time of its adoption. Manufacturing corporations are private corporations in the strictest sense, as they are created for the convenience of the corporation, and are charged with no public duties whatever. Under the laws of the State and the provisions of their charters they enjoy great privileges adapted to the purposes of private profit, and by the laws of the State they are exempt from all other taxation, municipal or State, except a property tax on their real estate and machinery, which is based on a valuation in the same manner as taxes are imposed on the property of individuals.

Corporate franchises, as determined in the preceding case, are legal estates, and not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation by virtue of their charter, and the rule is equally well settled that the privileges and franchises of a private corporation, unless exempted in terms which amount to a contract, are as much the legitimate subjects of taxation as any other property of the citizens within the sovereign power of the State. Such corporations are not exempted by the laws of the State, and never were in terms which deprived the legislature of the power to impose on them a franchise tax.†

All trades and avocations by which the citizens acquire a livelihood may also be taxed by the State for the support of

---

* Commonwealth *v.* Hamilton Manufacturing Company, 12 Allen, 300.

† 5 Massachusetts Stat. 76; 6 Spec. Laws, 227, 597; Sess. Laws, 1830, 326; 7 Spec. Laws, 192, 730; Revised Stat. 830.

the State government.   Power to that effect resides in the State independent of the Federal government, and is wholly unaffected by the fact that the corporation or individual has or has not made investments in Federal securities.   Unless such be the rule, the two systems of government, State and Federal, cannot both continue to exist, as the States will be left without any means of support or of discharging their public obligations.

Congress undoubtedly may levy and collect taxes, duties, imposts, and excises, for the purposes described in the Constitution, but the power therein conferred does not, *proprio vigore*, operate as a prohibition upon the States to exercise the same powers to raise moneys to support their own governments.   They cannot lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws, not because Congress may lay and collect taxes, duties, imposts, and excises, but because the Constitution expressly provides that no State shall exercise that power without the consent of the Congress.*

Want of authority in the States to tax the securities of the United States issued in the exercise of the admitted power of Congress to borrow money on the credit of the United States, is equally certain although there is no express prohibition in the Constitution to that effect.   Outside of those provisions, however, the power of the State to tax extends to all objects except the instruments and means of the Federal government, within the sovereign power of the State. Guided by these principles in the construction of the fifth section of the act under consideration, it is quite clear that the substantial question presented for decision is the same as that determined in the case just decided.   Only difference is that different elements of calculation are prescribed as the basis of computation in ascertaining the amount of the required contribution.

Separated from the peculiar provision of the State consti-

---

* Art. I, § 8.

tution, and the long practice under the original decision, the present decision of the State court upon the subject might well be criticized as founded in unsubstantial distinctions, but when weighed as an exposition of that peculiar clause and in view of the long practice of the State, commencing long before the prior decision was made, it is not possible to withhold from the conclusion a full and unqualified concurrence. Most of the solid reasons for the rule are put forth in the early decision. Successors to the chief justice of that day, in treating the subject, though their opinions are able and well considered, have not been able to add much to the cogency and conclusive character of the reasons assigned by the court at that time in support of the well-founded distinction between franchise taxes and taxes on property.*

Fifty years have elapsed since that decision was made, and the practice in substance and effect is still continued, having been repeatedly sanctioned by the unanimous decisions of the highest judicial authority of the State. Attempt is made to support the theory of the corporation defendants by the recent decisions of this court, but the effort is not successful, as was satisfactorily shown in the preceding case, to which reference is made.

Property taxation and excise taxation, as authorized in the constitution of the State, are perfectly distinct, and the two systems are easily distinguished from each other, if we adopt the definition of the term " commodities" as uniformly given by the courts of the State, and as universally understood by the tax-payers and assessors. If regarded as meaning goods and wares only, there would be much difficulty in the case, but if it signifies " convenience, privilege, profit, and gains," as uniformly held by the State court, then all difficulty vanishes, and the case is clear. Such was the construction given to the term by the Supreme Court of the State more than fifty years before the present controversy arose, and the rule is well settled in this court that the construction of the constitution or statute of a State by the highest judicial tribu-

---

* Portland Bank *v.* Apthorp, 12 Massachusetts, 252.

nal of such State, in a case not involving any question under the twenty-fifth section of the Judiciary Act, is to be regarded as a part of the provision, and that it is as binding upon the courts of the United States as the text.*

Many of the views expressed by the State court in this case, as well as those advanced by the counsel of the State in the argument of the case, deserve particular notice. They say and we agree that the market value of the capital stock on the shares is the basis for computing the present tax. Whatever swells the market value necessarily swells the tax, as is well contended for the State. Even if a purely fictitious value is given to it by the action of brokers or speculators, it makes no difference, the corporation must pay the one and one-sixth per cent. upon the excess of such market value of the capital stock over the value of their real estate and machinery as returned by the local assessors.

Taxes rise with inflation, however caused or to whatever extent, whether temporary or permanent; and depression, be it ever so great, and whether caused by imaginary difficulties or by war or famine, lessens the demand for contribution in a corresponding ratio. Suffice it to say that universal experience shows that actual value, as ascertained by the appraisement of the assessors, may be very different from the market value, as a great variety of elements enter into the latter estimation which have no place in the former. Demonstration of that proposition is afforded in the very able opinion of the Supreme Court of the State in this case.

Our conclusion is, that the decision of the State court is correct.

JUDGMENT AFFIRMED WITH COSTS.

The CHIEF JUSTICE, GRIER, J., and MILLER, J., as in the preceding two cases, similar, dissented, and on the same ground, to wit, that the tax was a tax on the property, and not on the franchises and privileges of the plaintiff in error.

---

* Leffingwell v. Warren, 2 Black, 608; Bank of Hamilton v. Dudley, 2 Peters, 492; Shelby v. Gray, 11 Wheaton, 351.