FARR ALPACA COMPANY *vs.* COMMONWEALTH.

Suffolk. March 26, 27, 1912. — May 24, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Tax*, Excise. *Corporation*, Taxation. *Constitutional Law*, Excise tax.

The tax upon a domestic corporation provided for by St. 1909, c. 490, Part III, § 43, is an excise upon its franchise and not a tax upon its property.

Wool, purchased in a foreign country by a Massachusetts manufacturing corporation owning only real estate, machinery and merchandise, and by it brought to this Commonwealth and entered for warehousing in a United States bonded warehouse where it remains in the original packages subject to an unpaid duty to the United States, is not property of the corporation "situated in another State or country and subject to taxation therein," the value of which, under St. 1909, c. 490, Part III, § 41, cl. 3, § 43, is to be deducted from the value of the corporate franchise, or from the value of its real estate, machinery and merchandise, in ascertaining the basis for computation of the excise provided for by the statute.

In St. 1909, c. 490, Part III, § 43, which among other things provides in substance that in computing the excise to be paid by a domestic corporation as provided by that act, an amount, less certain deductions provided for in § 41, "twenty per cent in excess of the value . . . of [the corporation's] works, structures, real estate, machinery, underground conduits, wires and pipes, and merchandise, and of securities which if owned by a natural person resident in the Commonwealth would be liable to taxation" is to be taken as a basis for the computation in case the value of the corporate franchise as ascertained by the tax commissioner exceeds that amount, the word "merchandise" includes wool purchased in a foreign country by such a corporation and by it brought to this Commonwealth and entered for warehousing in a United States bonded warehouse where it remains in the original packages subject to an unpaid duty to the United States; and such a construction of the statute does not affect its constitutionality.

PETITION under St. 1909, c. 490, Part III, § 70, filed in the Supreme Judicial Court on November 13, 1911, and amended by

substituting a new petition on February 23, 1912, by a corporation organized under the laws of this Commonwealth, seeking the abatement of a part of an excise tax assessed upon the petitioner under §§ 41, 43 of the statute.

Such portions of § 41 of the statute as are material to the case are as follows:

"The tax commissioner shall ascertain from the returns or otherwise the true market value of the shares of each corporation subject to the requirements of the preceding section, and shall estimate therefrom the fair cash value of all of said shares constituting its capital stock on the preceding first day of May, which, unless by the charter of a corporation a different method of ascertaining such value is provided, shall, for the purposes of this part, be taken as the true value of its corporate franchise. From such value there shall be deducted:

. . . . . . . . .

"Third, In case of a domestic business corporation, the value of the works, structures, real estate, machinery, poles, underground conduits, wires and pipes owned by it within the Commonwealth subject to local taxation, and of securities which if owned by a natural person resident in this Commonwealth would not be liable to taxation; also the value of its property situated in another State or country and subject to taxation therein; but the tax commissioner in determining for the purposes of taxation the value of the corporate franchise of any such corporation shall not take into consideration any debts of such corporation unless the returns required from it contain a statement duly signed and sworn to, setting forth that no part of such debts was incurred for the purpose of reducing the amount of taxes to be paid by it.

"Fourth, In case of corporations subject to the requirements of the preceding section, other than railroad corporations, telegraph, telephone, street railway and electric railroad companies, whether chartered or organized in this Commonwealth or elsewhere, and of domestic business corporations, the value as found by the tax commissioner of their works, structures, real estate, machinery, underground conduits, wires and pipes, subject to local taxation wherever situated.

"For the purposes of this section the tax commissioner may take the value at which such works, structures, real estate, ma-

chinery, poles, underground conduits, wires and pipes are assessed at the place where they are located as the true value, but such local assessment shall not be conclusive of the true value thereof."

Material portions of § 43 are quoted in the opinion.

The case was reserved by *Braley, J.,* upon the pleadings and an agreed statement of facts for determination by the full court.

From the agreed statement of facts it appeared that, proceeding under the statute, the tax commissioner ascertained the true value of the petitioner's corporate franchise to be $9,840,000. The value of its real estate and machinery he determined to be $2,560,720, and the value of its merchandise to be $1,936,023, of which $549,190 represented the wool imported by the petitioner and remaining in a United States bonded warehouse, as stated in the opinion. The sum of the values of the real estate, machinery and merchandise was therefore found to be $4,496,743, and a sum twenty per cent in excess thereof to be $5,396,091. The value of the corporate franchise being in excess of this last amount, a tax was levied under § 43 of the statute upon that amount, $5,396,091, less deductions authorized by § 41, cl. 3. In making such deductions, the tax commissioner deducted only the value of the petitioner's real estate and machinery, $2,560,720, leaving as the sum upon which the tax was levied $2,835,371.

The petitioner contended that, in ascertaining under § 43 the "amount, less" the deductions authorized by § 41, "twenty per cent in excess of the value, as found by the tax commissioner, of the works, structures, real estate, machinery . . . and merchandise, and of securities which if owned by a natural person resident in the Commonwealth would be liable to taxation," the wool described in the opinion should not be included; and that it should be included in the amounts to be deducted under § 41, cl. 3, as "property situated in another State or country and subject to taxation therein." The petitioner also contended that, so far as the wool in bond was concerned, if the statute did not mean what it contended it meant, it was unconstitutional as being repugnant to the clause of the United States Constitution declaring that "no State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; "

and repugnant to the clause of the United States Constitution which declares that the Congress shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

*A. L. Green,* (*F. F. Bennett* with him,) for the petitioner.

*A. Marshall,* Assistant Attorney General, for the Commonwealth.

RUGG, C. J.   This is a petition for abatement of an excise levied under St. 1909, c. 490, Part III, §§ 41, 43, upon a corporation organized under the laws of this Commonwealth.   The petitioner owned wool valued at $549,190.32 purchased abroad, brought by it to this country, and entered for warehousing by it in a United States bonded warehouse at Holyoke in this Commonwealth.   The controversy revolves about this item.   It was in the original packages subject to an unpaid duty to the United States, and it had remained the property of the petitioner from the time of its purchase in a foreign country.   The tax commissioner ascertained the true market value of the shares of the capital stock of the petitioner from its return to be $9,840,000, and this was "taken as the true value of its corporate franchise," under § 41.   From this was deducted the value of the petitioner's real estate and machinery in Holyoke subject to local taxation.   Section 43 provides that every corporation, subject to its provisions, shall pay an annual excise tax "upon its corporate franchise, after making the deductions provided for in section forty-one" at a specified rate, with the further provision that the "tax upon the value of the corporate franchise of a domestic business corporation, after making the deductions provided for in section forty-one, shall not exceed a tax levied at the rate aforesaid upon an amount, less said deductions, twenty per cent in excess of the value, as found by the tax commissioner, of the works, structures, real estate, machinery, underground conduits, wires and pipes, and merchandise, and of securities which if owned by a natural person resident in this Commonwealth would be liable to taxation."   The value of the petitioner's corporate franchise was so large that its tax was required to be levied under the clause just quoted.

The tax provided by this section is an excise upon the franchise of the corporation, and not a tax upon its property.   Our statutes, however, levying an excise upon corporate franchises, exhibit a

progressive tendency to prevent the technical distinction between excises and property taxes from resulting in double taxation. *Tremont & Suffolk Mills* v. *Lowell,* 178 Mass. 469, 471. The twenty per cent limitation appeared first in St. 1903, c. 437, § 74, and in view of the report of the committee which was the basis of this statute may have been enacted for the purpose of putting domestic corporations more nearly upon an equality with foreign corporations, and lessening the discrimination against domestic corporations which had theretofore existed. See *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385, 389, 390. But the act and 'the report of the committee manifest no intention to put the excise levied upon a domestic corporation upon an equality with the property taxes to be assessed upon individuals. An examination of the details of the successive corporation taxes and the deductions which they severally provide from the value of the franchise before levying the tax show merely a policy of avoiding what might in some instances be double taxation· as to property located outside of the Commonwealth, and lessening the rigor of the domestic corporation tax. See St. 1864, c. 208, § 5; St. 1865, c. 283, § 5; Pub. Sts. c. 13, §'14; R. L. c. 14, §§ 38, 40; St. 1902, c. 342, § 3; St. 1903, c. 437, §§ 72, 74; St. 1904, c. 261.

In determining the true value of the petitioner's corporate franchise, the wool which it owned in the bonded warehouse necessarily was taken into account. The first question is whether it should be included under clause third of § 41, which provides that the value of "the works, structures, real estate, machinery . . . also the value of its property situated in another State or country and subject to taxation therein" shall be deducted from the true value of the corporate franchise before the excise is computed. It is plain that the wool should not have been deducted under this clause. Whether it could be said to be constructively in another State or country because in a bonded warehouse from which it might have been exported without the payment of duty, although physically in this State, it certainly was not "subject to taxation therein." Hence it was not within the description of property that should be deducted.

It is strongly urged, however, that it should not have been included as a part of the value "of the works, structures, real estate, machinery . . . and merchandise, and of securities which

if owned by a natural person resident in this Commonwealth would be liable to taxation," to which twenty per cent may be added before the excise is computed. The determination of this question depends upon the definition and scope of "merchandise" as used in the statute. Plainly, it does not refer to merchandise which "if owned by a natural person in the Commonwealth would be liable to taxation." That fraction going to make up the total value is confined to "securities" as the last antecedent by the punctuation and by the grammatical construction of the sentence. Moreover, in the interpretation of the franchise excise law, the court has uniformly followed the general principle of statutory interpretation that express mention of items by implication excludes other matters not mentioned. *Commonwealth* v. *New England Slate & Tile Co.* 13 Allen, 391. *American Glue Co.* v. *Commonwealth*, 195 Mass. 528, 530. It seems clear that the word "merchandise", as used in this statute, includes wool. It was said in *New England & Savannah Steamship Co.* v. *Commonwealth*, 195 Mass. 385, referring to the same word in the earlier statute, "the word 'merchandise', so far at least as respects chattels, must be construed as including tangible property which may be the subject of sale." There is nothing in the context to indicate that it is used in any other than its natural significance. It includes the merchandise of the petitioner wherever situated, and under whatever circumstances it may be held, provided only that it is not subject to taxation in some other State or country. Great reliance is placed by the petitioner upon the sentence in the opinion of the *American Glue Co.* v. *Commonwealth*, 195 Mass. 528, at 531, to the effect that "The object of this later section [now § 43] is to limit the taxation, by establishing a maximum which is founded upon the amount of property held by the corporation that would be taxable if held by an individual, apart from the value of its franchise and other assets which are not subject to taxation as property, and to prohibit a charge in excess of twenty per cent above the percentage upon this amount." Strictly construed, this language gives some color to the petitioner's contention, but it was used with an entirely different purpose as to a quite different state of facts, and was not intended to apply to a case like the present. Every judgment must be read with respect to the facts with which it was dealing. As contended by

the Commonwealth, the language referred to property of a taxable nature, and not property technically subject to taxation in this Commonwealth. The point now to be determined is not whether the merchandise would be taxable if held by an individual, but whether the Legislature has directed that it be included or excluded in determining the amount upon which the excise shall be computed. It is included in the ascertainment of true franchise value provided for in the first part of § 41. It is not included in the deductions mentioned in clause third of the same section. It is comprehended by fair intendment in the enumeration of items for determining the value of the property to which the twenty per cent shall be added before the excise is computed. That in ascertaining the franchise value for the purpose of levying the excise consideration has been given to the ownership of property which is not subject to taxation does not impair the validity of the excise. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298.

As thus construed, the statute is not obnoxious in the provision of the Constitution of this Commonwealth or of the United States of America.

It is imposed not upon the assets or physical property of the corporation, but upon the franchise granted by the sovereign power. The right to exist and carry on business as a corporate entity, a privilege bestowed by the State and not existing as a natural right, is the "commodity" which is subject to the power of the Legislature for the purpose of laying an excise under c. 1, § 1, art. 4 of the Constitution of this Commonwealth. It is not a property tax. If regarded as a property tax it would violate the Constitution of the Commonwealth, which in the same article requires all taxes upon property to be proportional. This is not proportional. It is valid, however, because reasonable in its operation and levied upon the franchise of the corporation, which is its capacity to exist, to combine capital and to do business in a corporate form. This has been the consistently continuous attitude of this court manifested in many decisions covering almost a century in construing tax laws enacted from time to time by the Legislature under the grant of power to it in the Constitution. Our system of corporation taxation is founded upon these principles. This has been decided too many times to require a cita-

tion of all the authorities, but some of the leading ones are collected in a footnote.*

This principle of raising revenue was first adapted to general business corporations by St. 1864, c. 208. Its constitutionality was upheld in *Commonwealth v. Hamilton Manuf. Co.* 12 Allen, 298; *S. C. Hamilton Manuf. Co.* v. *Massachusetts,* 6 Wall. 632. The aspect presented to the Supreme Court of the United States was this: The excess of the market value of the capital stock of the business corporation above the deductions made for real estate and machinery taxed locally as property upon which the excise was levied was made up in part by a substantial investment in bonds exempt from State taxation under the law of the United States. It was urged that in effect the excise so calculated was a tax on property. Plainly the statute could not stand if it imposed a tax on property. But it was held that under our Constitution and judicial decisions property taxes and excise taxes were "perfectly distinct;" that the excise should be upheld as a franchise tax upon the commodity of being a corporation, and that it was "not possible to withhold from the conclusion [reached by the Supreme Judicial Court of Massachusetts] a full and unqualified concurrence." That case is not distinguishable in principle from the present. In that as in this the gauge by which the amount of the excise upon the franchise was measured was affected directly by the ownership by the corporation of property wholly exempted as property from taxation by the State under the Federal Constitution. Imports are not subject to taxation, directly or indirectly,

---

* *Portland Bank* v. *Apthorp,* 12 Mass. 252. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428. *Commonwealth* v. *Provident Institution for Savings,* 12 Allen, 312. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148. *Connecticut Mutual Life Ins. Co.* v. *Commonwealth,* 133 Mass. 161. *Firemen's Fire Ins. Co.* v. *Commonwealth,* 137 Mass. 80. *Boston Manuf. Co.* v. *Commonwealth,* 144 Mass. 598. *Tremont & Suffolk Mills* v. *Lowell,* 178 Mass. 469. *Worcester* v. *Board of Appeal,* 184 Mass. 460, 465. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239. *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385. *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, 23. *Commonwealth* v. *Berkshire Life Ins. Co.* 98 Mass. 25, 27. *Manufacturers' Ins. Co.* v. *Loud,* 99 Mass. 146. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. 381. *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207. *S. S. White Dental Manuf. Co.* v. *Commonwealth, ante,* 35.

by a State. *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500. Imports in a United States bonded warehouse are no more free from State taxation than United States bonds. But if the corporate entity is more valuable and its potentiality for the transaction of business greater because of the ownership of tax exempt property, that circumstance affords no reason for not imposing upon the commodity of being a corporation an excise, the amount of which is increased by reason of such ownership. It is conceivable that a corporation might be organized under our law which should deal exclusively in goods in United States bonded warehouses. It could hardly be contended that such a corporation would be freed from all liability to contribute to the support of the government. The franchise enjoyed by it as a grant from the government might be of great value and yield large profits. *Hamilton Manuf. Co.* v. *Massachusetts,* 6 Wall. 632, has been cited with approval often by the Supreme Court of the United States, and has never been limited, narrowed or overruled. In the latest discussion of the subject by that court, in *Flint* v. *Stone Tracy Co.* 220 U. S. 107, it was said at 163: "The distinction lies between the attempt to tax the property as such and to measure a legitimate tax upon the privileges involved in the use of such property."

The excise in the case at bar meets the test of this distinction. Our excise tax upon corporate franchises is sound in principle, reasonable in its operation, and has stood under the protection of so many decisions of this court and an express judgment in its favor of the Supreme Court of the United States, that it is not open to successful assault. *Home Ins. Co.* v. *New York,* 134 U. S. 594. *Snyder* v. *Bettman,* 190 U. S. 249, 254. *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 516. *Plummer* v. *Coler,* 178 U. S. 115, 125, 127. *Murdock* v. *Ward,* 178 U. S. 139, 147. *Ashley* v. *Ryan,* 153 U. S. 436, 445. *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204, 210.

*Petition dismissed with costs.*