The Macallen Company *vs.* Commonwealth.

Suffolk.     January 10, 1928. — September 20, 1928.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Carroll, JJ.

*Tax*, Excise on corporation. *Corporation*, Taxation. *Constitutional Law*, Taxation, Impairment of obligation of contract, Ex post facto law. *Statute*, Construction.

G. L. c. 63, § 32, as amended by St. 1923, c. 424, § 1, requiring domestic corporations to pay a certain annual sum "with respect to the carrying

on or doing of business by" them, does not impose a tax on property or income, but is a valid excise measured in part by a portion of the "net income" of the corporation.

The enactment of St. 1925, c. 343, § 1A, amending G. L. c. 63, § 30, cl. 5, and changing the definition of "net income" within the provisions of G. L. c. 63, § 32, as amended by St. 1923, c. 424, § 1, so that those words should mean "the net income for the taxable year as required to be returned by the corporation to the Federal government . . . adding thereto . . . all interest and dividends not so required to be returned as net income . . . [with certain exceptions]," was not a levy, nor an attempt to levy, a tax on income derived by domestic corporations from tax exempt property, but established an excise as above described; and that statute is valid so far as it required the inclusion, in the computation of the "net income" of a certain domestic corporation, of interest received by the corporation from Liberty bonds issued by the United States, which, by Federal statute, were "exempt . . . from all taxation . . . by any State . . . upon the income or profits of . . . corporations"; and from Federal farm loan bonds of Federal land banks, which, by Federal statute, were "exempt from Federal, State, municipal, and local taxation."

The exemption from taxation of bonds and notes of counties and municipalities of this Commonwealth under G. L. c. 59, § 5, Twenty-fifth, relates solely to local taxation, and not to excises; and St. 1925, c. 343, § 1A, amending G. L. c. 63, § 30, cl. 5, so far as it requires the inclusion of interest received by a domestic corporation from such bonds and notes in the computation of the "net income" of the corporation to determine the excise imposed upon it by G. L. c. 63, § 32, as amended by St. 1923, c. 424, § 1, is not in conflict with that part of art. 1, § 10, of the Constitution of the United States which forbids a State to "pass any . . . *ex post facto* law, or law impairing the obligation of contracts."

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on March 4, 1927, for the abatement of a tax under G. L. c. 63, § 77, as amended by St. 1922, c. 520, § 14.

The petition is described in the opinion. The respondent filed a demurrer which was heard by *Sanderson*, J. A final decree was entered sustaining the demurrer and dismissing the petition, and the petitioner appealed.

*T. Allen*, for the petitioner.

*R. A. Cutter*, Assistant Attorney General, for the respondent.

RUGG, C.J. This petition for the abatement of a tax under G. L. c. 63, § 77, as amended by St. 1922, c. 520, § 14, comes before us on appeal from a final decree whereby a demurrer filed by the defendant was sustained and the bill

dismissed. All facts well pleaded must be taken as true for the purposes of this decision. The petitioner is a corporation established under the laws of this Commonwealth and has duly filed its excise tax returns as required by law. The commissioner of corporations and taxation, acting pursuant to G. L. c. 63, § 32, and § 30 as amended by St. 1925, c. 343, § 1A, added to the net income of the petitioner as determined by its Federal income tax return, sums received by it as interest from Liberty bonds issued by the United States, from Federal farm loan bonds of Federal land banks, and from bonds or notes of counties and municipalities of this Commonwealth, all of which bonds and notes were owned by the petitioner. The Liberty bonds are "exempt, both as to principal and interest from all taxation now or hereafter imposed by any State [with exceptions not here material] . . . upon the income or profits of individuals, partnerships, associations, or corporations." Act of Congress approved September 24, 1917, 40 U. S. Sts. at Large, 288, 291, c. 56, § 7, as amended by Act of Congress approved April 4, 1918, 40 U. S. Sts. at Large, 502, 504, c. 44, § 3. The Federal farm loan bonds "and the income derived therefrom" are "exempt from Federal, State, municipal, and local taxation." Act of Congress approved July 17, 1916, 39 U. S. Sts. at Large, 360, 380, c. 245, § 26. The county and municipal bonds and notes were issued in accordance with law so as to be "exempt from taxation" under G. L. c. 59, § 5, Twenty-fifth. It is conceded that the excise tax was assessed, computed and levied in accordance with the requirements of the terms of the statutes of the Commonwealth. The single contention urged is that the part of St. 1925, c. 343, § 1A, whereby income of the petitioner derived from its investments already described was used, in combination with other factors, in ascertaining its net income as partial basis of the excise tax, is unconstitutional on several grounds. No other part of the excise tax law is assailed. The argument of the petitioner is confined to said § 1A and its effect upon the amount of its excise tax.

It is plain that, under our system of taxation of domestic corporations, the tax here attacked is a pure excise as dis-

tinguished from a property tax. It is declared by G. L. c. 63, § 32, to be an "excise" "with respect to the carrying on or doing of business" by the corporation. Although there have been differences of detail as to the calculation of the tax upon domestic corporations, the unbroken current of decisions of this court has been to the effect that our method of taxing domestic corporations has been by excise as distinguished from a property tax. Indeed, only in that way can the validity of the general method of our corporation tax be upheld under c. 1, § 1, art. 4 of the Constitution of this Commonwealth, which requires all property taxes to be "proportional," but permits "excises" to be levied upon principles not proportional. Only a few of the many cases to this point need be cited. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428. *S. S. White Dental Manuf. Co.* v. *Commonwealth,* 212 Mass. 35, 38–41, where most of the earlier cases are collected and reviewed. *Farr Alpaca Co.* v. *Commonwealth,* 212 Mass. 156, 159. *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 527, 528. *Springdale Finishing Co.* v. *Commonwealth,* 242 Mass. 37, 40. *National Leather Co.* v. *Commonwealth,* 256 Mass. 419, 425, affirmed in *National Leather Co.* v. *Massachusetts,* decided on May 28, 1928, 277 U. S. 413, *Carlos Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 445, 449; *Same* v. *Same,* 261 Mass. 450, 453.

The proposition that our method of collecting revenue is an excise and not a property tax was expressly declared after full discussion in *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632, 639, 640. That the nature of our system of exactions from corporations is an excise as distinguished from any other kind of taxation, established by our own decisions, was held in *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 84, where the judgments in *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. 381, and in *S. S. White Dental Manuf. Co.* v. *Commonwealth,* 212 Mass. 35, both marking and resting upon that distinction, were affirmed. The exaction required by G. L. c. 63, § 39, of foreign corporations is calculated on the same general principles as that required of domestic corporations, though with some incidental differences, and it is levied "with

respect to the carrying on or doing of business . . . within the Commonwealth." In that particular the words of § 39 descriptive of the commodity made subject to the exaction are the same as those in the section under which the present exaction was levied. It was held in *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 216, touching exactions levied under said § 39, that the assertion that " 'The taxes complained of were excises and not property taxes.' 'Being excises these taxes are not taxes *on* property or net income, but taxes *measured by* property and net income . . . .' See *Judson Freight Forwarding Co.* v. *Commonwealth,* 242 Mass. 47," was the "view of the nature of the exaction . . . adopted by the court below, and we think it is the correct one." The "view of the nature of the exaction . . . adopted by the court below" on this point is set forth with some amplification in *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 530, at pages 545–548. We interpret the sections involved in the case at bar to mean the same as to the nature of the exaction as the sections interpreted in 244 Mass. at 545, 548, and succinctly affirmed in the quotation just made from 268 U. S. at page 216. It is an excise with respect to the carrying on or doing of business by the corporation, measured by property and net income. It is not a tax on property and net income.

The pertinent provisions of the statute under which the present tax was assessed are G. L. c. 63, § 32, as amended by St. 1923, c. 424, § 1, in these words: "Except as otherwise provided in sections thirty-four and thirty-four A, every domestic business corporation shall pay annually, with respect to the carrying on or doing of business by it, an excise equal to the sum of the following, provided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of the fair cash value of all the shares constituting its capital stock on the first day of April when the return called for by section thirty-five is due: (1) An amount equal to five dollars per thousand upon the value of its corporate excess. (2) An amount equal to two and one half per cent of that part of its net income, as defined in this chapter, which is derived from

business carried on within the Commonwealth"; and G. L. c. 63, § 30, cl. 5, as amended by St. 1925, c. 343, § 1A, in these words: "'Net Income', except as otherwise provided in sections thirty-four and thirty-nine, [shall mean] the net income for the taxable year as required to be returned by the corporation to the Federal government under the Federal revenue act applicable for the period, adding thereto any net losses as defined in said Federal revenue act that have been deducted, and all interest and dividends not so required to be returned as net income except dividends on shares of stock of corporations organized under the laws of the Commonwealth and dividends in liquidation paid from capital."

It is plain and is conceded by the Commonwealth that these provisions of the law were followed in computing the excise. It is equally plain that the excise was larger than it would have been if the income from the tax exempt securities had not been added to other items in making up the factor of "net income." This income, however, was not taxed; it simply was employed in connection with other factors in ascertaining the measure for computing the excise "with respect to the carrying on or doing of business" by the petitioner. All the property of the petitioner other than real estate and machinery used in the conduct of its business was expressly exempted from State and local taxation. G. L. c. 59, § 5, Sixteenth, as amended by St. 1924, c. 321, § 1, and by St. 1926, c. 279, § 1. See also St. 1924, c. 321, § 2. Its only contribution to the support of government with those exceptions was by way of the excise here in issue.

We regard the validity of the excise thus measured as settled by authority. In *Provident Institution* v. *Massachusetts*, 6 Wall. 611, assault was made on the validity of an excise levied by the authority of a statute of this Commonwealth whereby the amount of deposits in a savings bank was used as the measure of the excise. A substantial proportion of the deposits of that particular bank was invested in bonds of the United States expressly exempted from all taxation under State law. 12 U. S. Sts. at Large, 346, c. 33, § 2. Manifestly the amount of the excise was vitally affected by the question

whether these investments in bonds of the United States could be considered in ascertaining the amount of deposits by which the excise was measured. It was held, following *Society for Savings* v. *Coite*, 6 Wall. 594, that the exaction was an excise and not a property tax, and that the investment in bonds of the United States might be included in the calculation, and that the excise was not a tax on such bonds. In *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632, a statute of this Commonwealth was attacked. By that statute business corporations having a capital stock divided into shares were required to pay for the support of the State government a percentage upon the excess of the market value of all such stock over the value of its real estate and machinery. A large part of such stock of the Hamilton Company was invested in bonds of the United States expressly exempted from State taxation. If these bonds rightly could be used in calculating the excise, it would be greatly in excess of the excise due if they could not be so used. It was said in that decision, pages 636, 637, 638, 639, 640: "Defendant corporation resisted the claim of the State in the State court solely upon the ground that they were not liable under that act of the legislature to pay any tax at all to the State, because the cash market value of their capital stock did not exceed the returned value of their real estate and machinery, and the value of the bonds held by them which are exempt from State taxation. On the other hand the State contended that the defendants were bound by virtue of that act to pay a tax to the State treasurer upon the whole excess of the cash market value, as ascertained, of their capital stock over the value of their real estate and machinery as returned by the assessors. Liability to taxation in some form was conceded by the defendants except for the amount of their government securities, and the State did not claim any right to tax those securities or their real estate and machinery included in the lists furnished to the local assessors. Obvious issue between the parties was whether the value of the bonds held by the defendants should or should not be deducted from the excess of the cash market value of their capital stock over the value of their real estate and machinery. . . . Viewed in any light,

the agreed statement of facts shows to a demonstration, that the only question in the record, not fully determined in the case just decided [*Provident Institution* v. *Massachusetts*, 6 Wall. 611], is whether the tax imposed by the State is properly to be regarded as a tax on property or as a tax on the privileges and franchises of the corporation. Such a tax so levied is clearly not proportional as is required by the State constitution in respect to rates and taxes, and consequently, if sustained at all, either in whole or in part, it must be as an exercise of the power conferred in the State constitution of imposing reasonable duties and excises upon 'commodities' within the State. . . . Regarded as a tax on property, therefore, the tax is plainly invalid, and cannot be supported for a moment, as the law, if construed as authorizing such a tax, is in direct contravention of the State constitution as understood from the time of its adoption. Manufacturing corporations are private corporations in the strictest sense, as they are created for the convenience of the corporation, and are charged with no public duties whatever. Under the laws of the State and the provisions of their charters, they enjoy great privileges adapted to the purposes of private profit, and by the laws of the State they are exempt from all other taxation, municipal or State, except a property tax on their real estate and machinery, which is based on a valuation in the same manner as taxes are imposed on the property of individuals. Corporate franchises, as determined in the preceding case, are legal estates, and not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation by virtue of their charter, and the rule is equally well settled that the privileges and franchises of a private corporation, unless exempted in terms which amount to a contract, are as much the legitimate subjects of taxation as any other property of the citizens within the sovereign power of the State. . . . Want of authority in the States to tax the securities of the United States issued in the exercise of the admitted power of Congress to borrow money on the credit of the United States, is equally certain although there is no express prohibition in the Constitution to that effect. Outside of those

provisions, however, the power of the State to tax extends to all objects except the instruments and means of the Federal government, within the sovereign power of the State. Guided by these principles in the construction of the fifth section of the act under consideration, it is quite clear that the substantial question presented for decision is the same as that determined in the case just decided [*Provident Institution* v. *Massachusetts*, 6 Wall. 611]. . . . Property taxation and excise taxation, as authorized in the constitution of the State, are perfectly distinct, and the two systems are easily distinguished from each other, if we adopt the definition of the term 'commodities' as uniformly given by the courts of the State, and as universally understood by the tax-payers and assessors."

For more than sixty years the system of this Commonwealth of collecting contributions to the support of government from corporations by means of excises has stood under the shelter of these express and authoritative decisions of the court of last resort. We understand that these decisions have not been overruled or limited by subsequent adjudications, but on the contrary have been affirmed and their principles approved.

In *Home Ins. Co.* v. *New York*, 134 U. S. 594, a State excise was imposed upon the corporate franchise of a corporation measured by the extent of annual dividends. This excise was upheld although a large amount of gross income devoted to such dividends was derived from bonds of the United States. It was said at page 606: "In this case we hold, as well upon general principles as upon the authority of the first two cases cited from 6th Wallace [*Society for Savings* v. *Coite*, 6 Wall. 594. *Provident Institution* v. *Massachusetts*, 6 Wall. 611.], that the tax . . . is not a tax on the capital stock or property of the company, but upon its corporate franchise, and is not therefore subject to the objection stated by counsel, because a portion of its capital stock is invested in securities of the United States."

In *Flint* v. *Stone Tracy Co.* 220 U. S. 107, at pages 163–165, it was said: "There is nothing in these cases contrary, as we shall have occasion to see, to the former rulings of this court

which hold that where a tax is lawfully imposed upon the exercise of privileges within the taxing power of the State or Nation, the measure of such tax may be the income from the property of the corporation, although a part of such income is derived from property in itself non-taxable. The distinction lies between the attempt to tax the property as such and to measure a legitimate tax upon the privileges involved in the use of such property. In *Home Ins. Co.* v. *New York*, 134 U. S. 594, a tax was sustained upon the right or privilege of the Home Insurance Company to be a corporation, and to do business within the State in a corporate capacity, the tax being measured by the extent of the dividends of the corporation in the current year upon the capital stock. Although a very large amount, nearly two of three millions of capital stock was invested in bonds of the United States, expressly exempted from taxation by a statute of the United States, the tax was sustained as a mode of measurement of a privilege tax which it was within the lawful authority of the State to impose. Mr. Justice Field, who delivered the opinion of the court, reviewed the previous cases in this court, holding that the State could not tax or burden the operation of the Constitution and of laws enacted by the Congress to carry into execution the powers vested in the General Government. Yielding full assent to those cases, Mr. Justice Field said of the tax then under consideration: 'It is not a tax in terms upon the capital stock of the company, nor upon any bonds of the United States composing a part of that stock. The statute designates it a tax upon the "corporate franchise or business" of the company, and reference is only made to its capital stock and dividends for the purpose of determining the amount of the tax to be exacted each year.' In that case, in the course of the opinion, previous cases of this court were cited, with approval, *Society for Savings* v. *Coite*, 6 Wall. 594; *Provident Institution* v. *Massachusetts*, 6 Wall. 611. In the *Coite Case* a privilege tax upon the total amount of deposits in a savings bank was sustained, although $500,000 of the deposits had been invested in securities of the United States, and declared by act of Congress to be exempt from taxation by state author-

ity. In that case the court said: 'Nothing can be more certain in legal decision than that the privileges and franchises of a private corporation, and all trades and avocations by which the citizens acquire a livelihood, may be taxed by a State for the support of the state government. Authority to that effect resides in the State independently of the Federal Government, and is wholly unaffected by the fact that the corporation or individual has or has not made investment in Federal securities.' In *Provident Institution* v. *Massachusetts, supra,* a like tax was sustained. It is therefore well settled by the decisions of this court that when the sovereign authority has exercised the right to tax a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection that the measure of taxation is found in the income produced in part from property which of itself considered is non-taxable. Applying that doctrine to this case, the measure of taxation being the income of the corporation from all sources, as that is but the measure of a privilege tax within the lawful authority of Congress to impose, it is no valid objection that this measure includes, in part at least, property which as such could not be directly taxed. See in this connection *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, as interpreted in *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, 226."

It was said in *Frick* v. *Pennsylvania,* 268 U. S. 473, at page 496, that in *Plummer* v. *Coler,* 178 U. S. 115, "it was held that a State, in taxing the transfer by will or descent of property within its jurisdiction, might lawfully measure the tax according to the value of the property, even though it included tax-exempt bonds of the United States; and this because the tax was not on the property but on the transfer." See in this connection *Blodgett* v. *Silberman* (decided April 16, 1928), 277 U. S. 1, 17.

The same principle seems to us to be supported by other decisions. In *Kansas City, Fort Scott & Memphis Railway* v. *Kansas,* 240 U. S. 227, a State excise upon the corporate franchise of a domestic corporation was upheld although it employed substantially all its property in, and gained most of its income from, interstate commerce, and although inter-

state commerce is not subject to taxation by the States. It was decided in *Greiner* v. *Lewellyn*, 258 U. S. 384, that the Federal government might impose a tax on the transfer of an estate by death and include therein bonds issued by political subdivisions of a State although such bonds could not be directly taxed by the Federal government.

The petitioner relies upon certain recent decisions of the United States Supreme Court. In *Northwestern Mutual Life Ins. Co.* v. *Wisconsin*, 275 U. S. 136, a tax called an annual license fee upon the gross income of a domestic corporation, except rents from land otherwise taxed and premiums, which gross income included interest from bonds of the United States, was held void. The ground of the decision was thus stated at pages 140, 141: "The fundamental question, often presented in cases similar to these, is whether by the true construction of the statute the assessment must be regarded as a tax upon property or one on privileges or franchise of the corporation. *Society for Savings* v. *Coite*, 6 Wall. 594; *Home Insurance Co.* v. *New York*, 134 U. S. 594. Section 76.34 undertakes to impose a charge not measured by dividends paid, as in *Home Insurance Co.* v. *New York*, 134 U. S. 594, nor by net income, as in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; and those cases are not controlling. The distinction between an imposition the amount of which depends upon dividends or net receipts and one measured by gross returns is clear. *U. S. Glue Co.* v. *Town of Oak Creek*, 247 U. S. 321, 328, and earlier opinions there cited. . . . Here the statute undertook to impose a charge of 3 per cent. upon every dollar of interest received by the Company from United States bonds. So much, in any event, the State took from these very receipts. This amounts, we think, to an imposition upon the bonds themselves and goes beyond the power of the State." We regard that case as distinguishable from the case at bar because the exaction in the case at bar is an excise and not a direct or property tax, and because, as a part of the measure of that excise, not gross but net, income is used as a factor. The excise is not levied by necessary intendment upon every dollar of interest on the bonds of the United States. It is conceivable that

conditions might exist whereby the amount of the excise would not be increased by the receipt of income from these bonds. The distinction between gross income and net income as the basis for taxation affecting prohibited subjects appears to be well established by decisions of the United States Supreme Court. Taxes by the State upon gross income, which includes receipts from interstate and foreign commerce, — subjects wholly free from taxation by the several States, — have been held invalid under §§ 8 and 10 of art. 1 of the Constitution of the United States in *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 297, because the operation of such taxation was "to lay a direct burden upon every transaction by withholding, for the use of the State, a part of every dollar received": but taxes by the State upon net income, which likewise includes profits from interstate and foreign commerce, have been held valid in *Peck & Co.* v. *Lowe,* 247 U. S. 165, *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 327, 328, 329, *Shaffer* v. *Carter,* 252 U. S. 37, 57, and *Hump Hairpin Manuf. Co.* v. *Emmerson,* 258 U. S. 290. In the case last cited, at pages 294, 295, it was said as to such tax: "The turning point of these decisions is, whether in its incidence [the tax] affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of, or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it." *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120. *National Paper & Type Co.* v. *Bowers,* 266 U. S. 373, 377. *Barclay & Co. Inc.* v. *Edwards,* 267 U. S. 442, 447. The case of *Miller* v. *Milwaukee,* 272 U. S. 713, seems to us distinguishable from the present case in that there a property tax was levied upon an individual in substance in terms upon the interest derived from bonds of the United States. The case of *National Life Ins. Co.* v. *United States,* 277 U. S. 508, decided since the argument of the case at bar, appears to us not to invalidate the excise here in question. The tax there involved was a direct property tax and not an excise. It was levied by Act of Congress contrary to the tax exemption statute under which the bonds

were issued. The method of calculation and determination of the tax was such that the taxpayer was compelled in effect to pay a larger property tax than it would have been required to pay if its assets had been invested in securities other than bonds of the United States which were exempted from direct tax. Such a law so applied was held to be manifestly invalid. The court said, "Thus, he [the collector] required petitioner to pay more upon its taxable income than could have been demanded had this been derived solely from taxable securities. If permitted, this would destroy the guaranteed exemption. One may not be subjected to greater burdens upon his taxable property solely because he owns some that is free. No device or form of words can deprive him of the exemption for which he has lawfully contracted." In the case at bar there is no direct property tax, but a pure excise upon the doing of business; there is no more a tax upon the interest of the government bonds than were the excises upheld in *Provident Institution* v. *Massachusetts*, 6 Wall. 611, and in *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632, taxes upon the principal of such bonds.

We are unable to perceive any distinction between the excise here assailed and an inheritance tax or a transfer tax, also a pure excise, as distinguished from a property tax. *Minot* v. *Winthrop*, 162 Mass. 113, 116, 122. *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 515. *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 521; affirmed in *Saltonstall* v. *Saltonstall*, 276 U. S. 260. Yet a decision by a State court has been reversed because it had held that bonds and treasury certificates of indebtedness of the United States, owned by a deceased resident at the time of his death but physically in another jurisdiction, were not subject to a tax upon the right or privilege of succession to the property of the deceased person. *Blodgett* v. *Silberman*, 277 U. S. 1, 17, decided on April 16, 1928. It may be that that decision rests upon the exception of such bonds from exemption from "estate or inheritance taxes" in 40 U. S. Sts. at Large, 291, c. 56, § 7, although the opinion contains no reference to that exception. But there was no exception whatever in 12 U. S. Sts. at Large, 346, c. 33, § 2, to the

broad and inclusive provision that "all . . . bonds . . . of the United States held by . . . corporations . . . shall be exempt from taxation by or under State authority." It was that provision of an Act of Congress which was held not to be violated by the excise levied under the statute of this Commonwealth assailed in *Provident Institution* v. *Massachusetts*, 6 Wall. 611, and in *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632. As already pointed out, we interpret the excise here in question to be indistinguishable in its nature from that under review in the two decisions last cited. We are unable to distinguish the case at bar from those two decisions. It is not necessary to determine whether such statutory exemption from taxation by the States adds anything to the implied exemption from taxation by the States of all instrumentalities of the government of the United States which exists without any statute. That exemption arises from the "very nature of our constitutional system of dual sovereign governments," and includes income as well as principal of bonds of the United States. *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 521. *Farmers & Mechanics Savings Bank of Minneapolis* v. *Minnesota*, 232 U. S. 516, 525, 526. *Jaybird Mining Co.* v. *Weir*, 271 U. S. 609, 613. *Gillespie* v. *Oklahoma*, 257 U. S. 501, 505. *Northwestern Mutual Life Ins. Co.* v. *Wisconsin*, 275 U. S. 136, 140. We rest this opinion upon the footing that all these Federal securities are exempt both as to principal and interest from taxation by this Commonwealth, and that they are not by the statute here attacked made subject to taxation.

The petitioner contends, however, that these principles are to be ignored in the case at bar because, with respect to St. 1925, c. 343, § 1A, under which the present excise was levied, its "avowed purpose or self-evident operation . . . is to follow the bonds of the United States and to make up for its inability to reach them directly by indirectly achieving the same result," and that therefore "the statute must fail even if but for its purpose or special operation it would be perfectly good," a principle declared in *Miller* v. *Milwaukee*, 272 U. S. 713, 715. Of course we accept that principle as

governing all cases to which it is applicable.   It seems to us to have no pertinency to the present case.

A short answer to this contention may be that our tax law, previous to the enactment of said c. 343, expressly excluded such bonds from the factor of net income in measuring the excise tax, although as shown by the decisions already reviewed such exclusion was not legally necessary to the validity of the law.   That exclusion was an act of grace and not of necessity.   The tax law without such exclusion would have violated no provision of the Federal Constitution or laws. To do in the exercise of legislative discretion at a later time what might have been done originally did not transcend the power of the General Court.

But on broader grounds the contention, in our opinion, is unsound.   The title of said c. 343 is, "An Act Relative to Taxation of Banks and Trust Companies."   Of course it is manifest that income derived from these bonds is now used as a factor in ascertaining the net income of corporations, whereas it was not used before the enactment of said c. 343. It must be presumed that that result was intended.   It was in fact intended, as appears from the "Final Report of the Special Commission Appointed to Investigate the Operation of the Laws Relative to the Taxation of Certain Banking Institutions," which was presented to the Legislature of 1925.   This report was directed primarily to the taxation of these institutions.   That there was considerable pending litigation concerning that subject is apparent from *Central National Bank* v. *Lynn*, 259 Mass. 1, and *Collector of Taxes of Boston* v. *National Shawmut Bank*, 259 Mass. 14, and cases cited in each of these decisions.   That litigation arose because it was contended in behalf of national banks that our tax laws discriminated against them, contrary to permissive methods under U. S. Rev. Sts. § 5219.   That discrimination arose, (it was contended,) from an alleged lesser burden of taxation imposed, under our general income tax law, upon the individuals and, under our corporation excise law, upon the trust companies and the other financial corporations, carrying on business in competition with national banks.

The special committee was striving, as plainly appears from its report, to devise a system of exactions from financial corporations which would be just and lawful as to all such corporations. The conclusion was reached that an excise ought to be imposed calculated in part upon the entire net income of such corporations including income from government bonds and other similar securities exempt from direct property tax. That conclusion having been reached, it was thought best to make the same measure of excise applicable to all business corporations. Section 5219 of U. S. Rev. Sts. was amended by Act of Congress of March 25, 1926, 44 U. S. Sts. at Large, Part 2, 223, c. 88, so as to permit the inclusion of interest on tax exempt securities in ascertainment of net income of national banks for purposes of State taxation. The debates of Congress on the passage of that bill show that this result was clearly understood. 67 Congressional Record, pages 5760, 5761, 5822, 6080, 6089. As to permissibility of resort to these records, see *United States* v. *Wong Kim Ark*, 169 U. S. 649, 697–699, *James Everard's Breweries* v. *Day*, 265 U. S. 545, 561, 562. It can hardly be thought that an act of this nature would be passed by the Congress if the States could not pass the same kind of law with respect to their domestic corporations.

We are of opinion that plainly the General Court, in thus changing the measure of the corporate excise by the enactment of said c. 343, was not attempting by indirection to levy a tax on government bonds but was attempting to establish a just system of excises with respect to the carrying on or doing of business by corporations, and that the result of its attempts is not to establish a property tax but an excise measured in part by net income according to principles laid down in numerous decisions of the United States Supreme Court.

The interest derived from Federal land bank bonds seems to us to stand on the same footing, so far as concerns the issues here involved, as that from the bonds of the United States. They are expressly exempted by Act of Congress from State taxation both as to principal and interest. *Smith* v. *Kansas City Title & Trust Co.* 255 U. S. 180, 212. But,

as we hold and have undertaken to demonstrate, the exaction here assailed is not a tax levied upon the interest derived from such bonds, but is a valid excise "with respect to the carrying on or doing of business by" a domestic corporation, ascertained with relation to factors of such business permissible under sound constitutional principles. There was no error in using interest on these bonds as a factor in ascertaining the net income of the petitioner for purposes of the excise.

The argument, that the interest derived from county and municipal bonds issued by the political subdivisions of this Commonwealth could not be used in ascertaining the net income of the petitioner for the purpose of calculating its excise, is that so to do would be in violation of the contract clause of § 10 of art. 1 of the Constitution of the United States. That clause cannot be violated until a contract covering the alleged violation is shown to exist. The exemption of these securities from taxation is found in G. L. c. 59, § 5, Twenty-fifth. That chapter relates solely to the direct local taxation of property. It has nothing whatever to do with excises. The exemption contained in said clause Twenty-fifth, which it may be conceded becomes a matter of contract with the holder of such bonds as the petitioner owned, is an exemption from local property taxation. It confers no other kind of exemption. The exaction involved in the case at bar was not in any proper sense a property tax. It was not in any degree violative of the exemption clause invoked by the petitioner. As has already been shown (in our opinion), the exaction here assailed was a pure excise and not a property tax. It has been held to be no violation of a contract exemption from property taxation to impose an excise in the form of an inheritance tax upon the passage of municipal bonds upon the death of the owner. *Orr* v. *Gilman,* 183 U. S. 278, 288, 289. *Greiner* v. *Lewellyn,* 258 U. S. 384, 387. It was said in *Seton Hall College* v. *South Orange,* 242 U. S. 100, 106: "To all claims of contract exemption from taxation must be applied the well settled rule that, as the power to tax is an exercise of the sovereign authority of the State, essential to its existence, the fact of its surrender in favor of

a corporation or an individual must be shown in language which cannot be otherwise reasonably construed, and all doubts which arise as to the intent to make such contract are to be resolved in favor of the State." Exemptions from excise as well as property taxation are to be construed strictly. *Milford* v. *County Commissioners*, 213 Mass. 162, 165. *Wheelwright* v. *Tax Commissioner*, 235 Mass. 584, 586. *Trull* v. *Lowell*, 245 Mass. 45, 46. *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 445, 449. *Provident Bank* v. *Billings*, 4 Pet. 514, 516.

There is nothing in the contention that said c. 343 is an *ex post facto* law. That description applies only to criminal and not to civil laws. *Calder* v. *Bull*, 3 Dall. 386. *Carpenter* v. *Pennsylvania*, 17 How. 456, 463.

Every argument presented by the petitioner has been considered. The conclusion seems to us inevitable that the petitioner shows no ground for relief, and that the decree sustaining the demurrer was right on the first and second grounds assigned.

*Decree affirmed with costs.*